BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
LUXOTTICA OF AMERICA INC. d/b/a
LENSCRAFTERS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON GRAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LUXOTTICA OF AMERICA INC. D/B/A LENSCRAFTERS,<br><br>Defendant. | Case No. 8:24-cv-00160-MRA-DFM<br><br>[*Assigned to Hon. Mónica Ramírez Almadani*]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br><u>Hearing</u>:<br>Date: July 11, 2024<br>Time: 1:30 p.m.<br>Place: U.S. Courthouse<br>350 W. First Street<br>Courtroom 10B<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS

PAGE


I. INTRODUCTION ........ 1

II. FACTUAL ALLEGATIONS ........ 3

III. LEGAL STANDARD ........ 7

A. FRCP 12(b)(1) – Lack of Subject Matter Jurisdiction ........ 7

B. FRCP 12(b)(6) – Failure to State a Claim ........ 8

IV. ARGUMENT ........ 8

A. Plaintiff Lacks an Injury-in-Fact Required to Establish Article III Standing ........ 8

B. Plaintiff Fails to Allege the Disclosure or Viewing of Substantive Medical Information as Required by the Act ........ 12

C. Plaintiff Cannot Assert a Wiretapping Claim under California Law ........ 16

1. Cal. Penal Code §631(a) Does Not Apply to Service Providers ........ 17

2. Plaintiff's Aiding and Abetting Theory Fails Because There Is No Illegal Conduct ........ 18

D. Plaintiff Has Not Alleged A Legally Cognizable Invasion of Privacy Under State Law ........ 22

1. Plaintiff Cannot Allege a Legally Protected Privacy Interest or Reasonable Expectation of Privacy ........ 23

2. Any Alleged Intrusion Was Not Egregious or Highly Offensive ........ 25

V. CONCLUSION ........ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
No. 2:21-cv-02416-SBJPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ....21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....8

*Belluomini v. Citigroup Inc. et al.*,
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) ....25

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....20

*Byars v. Hot Topic, Inc.*
(C.D. Cal. Feb. 14, 2023) 2023 WL 2026994 ....18

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023), *judgment entered*, 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023)....10, 11

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....6

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ....8

*Cody v. Boscov's, Inc.*
(C.D. Cal. Mar. 2, 2023) 2023 WL 2338302....18

*Cousin v. Sharp Healthcare, Inc.*,
2023 WL 4484441 (S.D. Cal. July 12, 2023)....*passim*

*Danforth v. Placentia-Linda Hosp.*,
2023 Cal. Super. LEXIS 67193 (Aug. 31, 2023) ....14

*Eisenhower Medical Center v. Superior Court (Malanche)*,
226 Cal. App. 4th 430 (Cal. Ct. App. May 21, 2014) ....13, 15

*Ellsworth v. Schneider Nat'l Carriers, Inc.*,
2021 WL 6102514 (C.D. Cal. Oct. 28, 2021) ....................................................9

*Erhart v. BofI Holding, Inc.*,
269 F. Supp. 3d 1059 (S.D. Cal. 2017)...........................................................13

*Esparza v. Lenox Corp.*
(N.D. Cal. Mar. 16, 2023) 2023 WL 2541352 ..................................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000)...........................................................................................7

*Garcia v. Build.com, Inc.*
(S.D. Cal., July 13, 2023) 2023 WL 4535531 ..................................................18

*Google Assistant*, 457 F. Supp. 3d......................................................................22

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*,
750 F.3d 1098 (9th Cir. 2014) ..........................................................................20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)...............................................................17

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)............................................................22

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (Cal. 1994).....................................................................................23

*In re Adobe Systems, Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014)...............................................................7

*In re BPS Direct, LLC*,
No. 22-CV-4709, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) ....................10, 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ............................................................................16

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...............................................................................................16

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 25

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 25

*In re Vizio, Inc., Consumer Priv. Litig.*
(C.D. Cal. 2017) 238 F.Supp.3d 1204 .......... 21

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 23

*Keurig Green Mountain, Inc.*, 2023 WL 3707181 (N.D. Cal. May 24, 2023) .......... 21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 8

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 7

*Konop v. Hawaiian Airlines, Inc.*
(9th Cir. 2002) 302 F.3d 868 .......... 20, 22

*Licea v. Am. Eagle Outfitters, Inc.*
(C.D. Cal. Mar. 7, 2023) 2023 WL 2469630 .......... 18, 21

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 19

*Licea v. Cinmar, LLC*
(C.D. Cal. Mar. 7, 2023) 2023 WL 2415592 .......... 18

*Licea v. Vitacost.com, Inc.*
(S.D. Cal., July 24, 2023, No. 22-1854) 2023 WL 5086893 .......... 17

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal 2021) .......... 23, 24

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 23, 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....7, 8

*Martin*, 2023 WL 2717636 ....22

*Miguel Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024)....19

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2024)....21

*Popa v. PSP Grp., LLC*,
No. C23-0294JLR, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) ....10, 11

*Powell v. Union Pac. R. Co.*
(E.D. Cal. 2012) 864 F.Supp.2d 949 ....16

*Rahman v. Marriott Int'l, Inc.*,
No. SA CV 20-00654-DOC-KES, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021)....12

*Regents of University of California v. Superior Court*,
220 Cal. App. 4th 549 (2013) ....15

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....21, 22

*Rogers v. Ulrich*
(1975) 52 Cal.App.3d 894 ....16

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ....7

*Saleh v. Nike, Inc., et al*.,
562 F. Supp. 3d 503 (C.D. Cal. 2021)....24

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ....2

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....7, 8, 9

*Sutter Health v. Superior Court*,
227 Cal. App. 4th 1546 (2014) .......... 15

*Swarts v. Home Depot*
(N.D. Cal. 2023), 2023 WL 5615453 .......... 19, 21

*Tamraz v. Bakotic Pathology Assocs., LLC*,
No. 22-cv-0725-BAS-WVG, 2022 U.S. Dist. LEXIS 208345
(S.D. Cal. Nov. 16, 2022) .......... 13

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (1978) .......... 16

*Thomas v. Papa Johns International, Inc.*,
2023 WL 6370641 (S.D. Cal. Aug. 14, 2023) .......... 3

*Thomas v. TOMS King (Ohio), LLC*,
997 F.3d 629 (6th Cir. 2021) .......... 9

*Thomasson v. GC Servs. Ltd. P'Ship*
(9th Cir. 2008) 321 F. App'x 557 .......... 16

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 9, 10

*Twombly*, 550 U.S. .......... 8

*United States v. Heckenkamp*,
482 F.3d 1142 (9th Cir. 2007) .......... 12

*Valenzuela v. Kroger Co.*
(C.D. Cal., June 23, 2023) 2023 WL 4418887 .......... 18

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 19

*Vigil v. Muir Medical Group IPA, Inc.*,
84 Cal. App. 5th 197 (2022) .......... 15

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 19, 24

*Wilson v. Rater8 LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)....................................13, 14, 15

*Yale v. Clicktale, Inc.*
(N.D. Cal. Apr. 15, 2021, No. 20-07575) 2021 WL 1428400 ..........................17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................20, 24

**Statutes**

18 U.S.C. § 2702(c)(2)..............................................................................................20

Cal. Civ. Code § 56.05(j) ......................................................................................12, 14

Cal. Penal Code § 631(a) ....................................................................................*passim*

Cal. Penal Code § 637.2..................................................................................................5

CIPA § 637.2...................................................................................................................5

CMIA § 56.05 ..............................................................................................................14

CMIA § 56.10 ..............................................................................................................12

CMIA § 56.10(a).............................................................................................................5

CMIA § 56.101 .........................................................................................................5, 6

CMIA § 56.35 ................................................................................................................6

CMIA § 56.36 ..............................................................................................................15

CMIA § 56.36(b)......................................................................................................6, 12

**Other Authorities**

Black's Law Dictionary 479 (9th ed. 2009) ...................................................................9

FRCP 12(b)(1)..............................................................................................................3, 7

FRCP 12(b)(6)..............................................................................................................2, 8

U.S. Constitution Article III.......................................................................................*passim*

# I. INTRODUCTION

Plaintiff Brandon Gray ("Plaintiff") found a Facebook "tracking pixel" on Defendant Luxottica of America Inc.'s ("LensCrafters") website but does not allege whether the pixel was operating on the website at the times he used the website. Because he used the website "for numerous years" for "scheduling eye exams," and because "he received advertisements on Facebook and Instagram relating to vision care" on the same device that he used to access the website, Plaintiff concludes data about his use of the website was captured by the pixel thereby exposing LensCrafters to liability under state wiretapping and medical information laws. Plaintiff purports to support his conclusions regarding unlawful wiretapping, tracking and disclosure by reference to *general functionality* of Facebook's business tools, its "tracking pixel," and the event tags that a user can access through a "pixel helper." In addition to alleging zero facts for how the Facebook pixel *actually* operated on LensCrafters' website at the time of his use, Plaintiff fails to identify any fact regarding his own use of the website and what data regarding such use was purportedly captured by Facebook.

Instead, again, Plaintiff relies on generalities, "examples," and hypothesis which encompass his entire theory of the case. That is, Plaintiff merely repeats the conclusion that because LensCrafters used the pixel (at some point in time, unclear when), and the pixel *could be* configured to operate in certain ways, it must have collected "patients'" personal and sensitive medical and treatment information on its website (even though no such information is actually shared on the website), and that this information was then improperly shared with and viewed by Facebook without consent. Plaintiff does not actually factually explain his personal participation in any of the tracking or the when or how; instead, he hopes that through multiple inferences, the Court may find some possibility of wrongdoing. The only fact alleged is an "example" of a hypothetical patient that rescheduled an

eye exam on a webpage of the website with a URL[1] that contained the words "eye-exam" and "reschedule" which was then purportedly picked up by the pixel. As the Southern District Court ruled recently in regard to a similar case, such allegations fail to provide any "meaningful factual support as to what activities each Plaintiff engaged in on [the] website and what information each Plaintiff provided." *Cousin v. Sharp Healthcare, Inc.*, 2023 WL 4484441, *3 (S.D. Cal. July 12, 2023).

Now, even if Plaintiff can allege, or the Court can infer, that Plaintiff's similar use of the webpage for scheduling an eye exam was captured by the pixel as in the hypothetical, the claims would still be subject to dismissal under FRCP 12(b)(6). This is because, first, Plaintiff alleges merely the use of a public website to schedule eye exams. Courts have repeatedly held that appointment information, even if coupled with names or other identifying information, is not "medical information," "protected health information," or any sensitive information subjecting the data collector to liability under the Confidentiality of Medical Information Act (CMIA) because "nothing about [the] information relates specifically to Plaintiffs' health" and the information is "general health information that is accessible to the public at large." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Second, that a website user clicked on a webpage for scheduling an eye exam does not indicate that "contents" of a communication were "intercepted in transit" for purposes of Facebook's liability as a wiretapper and LensCrafters' liability as an aider and co-conspirator under the California Invasion of Privacy Act (CIPA), section 631(a) of the Penal Code. In short, Plaintiff's allegations are conclusory and devoid of any factual support. And because Plaintiff does not identify the dates of his website visits, or the particular information he input into the website, the allegations are

[1] A "URL" stands for Uniform Resource Locator. A URL is the website address—the address of a given unique resource on the Web.

also hopelessly vague and subject to dismissal under FRCP 12(b)(1) for lack of a case or controversy under Article III of the Constitution. For these same reasons, Plaintiff's common law invasion of privacy claim also fails. *Thomas v. Papa Johns Int'l, Inc.*, 2023 WL 6370641 (S.D. Cal. Aug. 14, 2023).

## II. FACTUAL ALLEGATIONS

Luxottica of America Inc. ("LensCrafters") is a retailer of eyeglasses and contact lenses. Compl. ¶5. LensCrafters offers such products through its website, www.LensCrafters.com, as well as the ability to schedule in-store eye exams. *Id*. & ¶19.

Plaintiff alleges that he is a resident of California and "has used [the] LensCrafter's [sic] Website for numerous years" to schedule eye exams to obtain new eye prescriptions. *Id.* at ¶¶6-7. Throughout this period, Plaintiff alleges he maintained a Facebook account and received advertisements on Facebook "relating to vision care." *Id.* at ¶8. Plaintiff alleges LensCrafters used a Facebook "tracking pixel" on its website. *Id*. ¶28. Plaintiff does not offer any more facts regarding his specific interactions with the Website, how long the Facebook pixel was operating on the Website *or when*, or any advertisements he received on Facebook.

Plaintiff's Technology Lesson

Next, Plaintiff engages in a technology pitch regarding Facebook's platform and business tools. Compl. ¶¶21-25. Plaintiff focuses in particular on the type of services Facebook offers to advertisers—namely, ability to identify and target relevant individuals who are using Facebook's social media. *Id.* Plaintiff also explains that the business tools can be configured (presumably by the advertiser/business) to capture "standard events" or "custom events" and data, such as the webpage URL, that a purchase was made, what action was taken, and what content was viewed on a website. *Id*. ¶¶26, 30. Plaintiff then finally identifies the

//

"Facebook Tracking Pixel" as a type of "business tool" and claims that such pixel (software script) "directs the user's browser to contemporaneously send a separate message to Facebook's servers … concurrent with the communications with the host website." *Id*. ¶27. Plaintiff goes on to describe how Facebook advertises its pixel to businesses (*id.* ¶¶29-33), and includes "example illustrations" of how the pixel purportedly *would work* on the Website as controlled by Facebook, and what Facebook *could* or *would* do with the data captured (i.e., create core and custom audiences). *Id*. ¶¶35, 36.

Plaintiff's Allegations Regarding LensCrafters

**Plaintiff never alleges how LensCrafters configured the pixel or how it actually worked on the Website, much less what information it collected, how it affected Plaintiff specifically, and when these events occurred.** Instead, Plaintiff provides more examples, presumably the "best one" he can find, where "a patient" was using the website to schedule an eye exam and landed on the "appointment" page thereby triggering a "PageView" event which showed the URL as being from a webpage about "eye-exam" and "rescheduling." Compl. ¶38.[2] Understanding that "PageView" data with a URL is not enough, Plaintiff then claims that Facebook's *independent* use of a browser cookie on Plaintiff's browser (having nothing to do with the website) that assigns a Facebook ID number to the browser, proves that "personally identifiable information" was *disclosed by LensCrafters*. This is obviously inaccurate and not supported by the

[2] Plaintiff provides screenshots purporting to show the "event tags" captured by the pixel as available through a self-help tool. *Id.* at ¶38. Plaintiff highlights that these screenshots include the terms "eye-exam" and "reschedule." *Id.* However, Plaintiff fails to highlight that these terms are included only as part of the public facing URL where the pixels are located. *Id.* These event tags do not reveal whether a person scheduled or attended an appointment, or for what medical condition – they merely confirm that a person visited a specific page. *Id.* Nor is it clear that this is Plaintiff's own Facebook event profile.

allegations in the Complaint. *See id.* ¶¶39-49. Not only is a Facebook ID number not "personally identifiable information," and is irrelevant, as explained below, such ID number can and is only assigned by Facebook itself.

Plaintiff's Allegations Regarding Federal Laws

Plaintiff sues LensCrafters under state specific privacy and medical information laws. However, Plaintiff spends pages discussing "personally identifiable information," "protected health information," and "individually identifiable health information" as those terms are defined under the Health Insurance Portability and Accountability Act (HIPAA), as well as by the Federal Trade Commission, and the Department of Health and Human Services, without tying their relevance to the specific causes of action asserted. These references to federal law are neither relevant nor persuasive as none of those terms are implicated in the state-specific causes of action at issue.

Plaintiff's Claims

First, Plaintiff asserts a state wiretapping claim under California Penal Code § 631(a), part of California's Invasion of Privacy Act (CIPA), which prohibits a non-party from willfully, and without consent of the parties to a communication, reading or learning the contents or meaning of any message, report or communication while in transit or passing over any wire, line or cable. Section 637.2 of CIPA allows a private right of action for "any person injured by a violation…" and Plaintiff seeks $5,000 in statutory damages per violation. Cal. Penal Code § 637.2; Compl. ¶80.

Next, Plaintiff brings a claim for violation of California's Confidentiality of Medical Information Act (CMIA), section 56.10(a), which prohibits the unauthorized disclosure of patient "medical information" by a provider of health care. Cal. Civ. Code § 56.10(a); Compl. ¶83. Although unclear, Plaintiff appears to plead that LensCrafters also violated section 56.101, by failing to preserve the

confidentially of patients' medical information. *Id.* n.4. Plaintiff seeks nominal damages under Section 56.36(b), as well as compensatory damages, punitive damages, and attorneys' fees under Section 56.35 of CMIA. *Id.* ¶92.

Neither of these statutes use the terms "personally identifying information" (PII) or "protected health information" (PHI) though Plaintiff concentrates on such terms including by way of defining a California class around them. (Compl. ¶61.)

<u>The LensCrafters Website</u>

Plaintiff does not identify when he used the Website where the pixel was active. In any event, during the relevant statutory limitations period (one year for claims under CIPA)[3], the Website employed a pop-up banner that appeared to website visitors upon landing on the website, stating as follows:

> Luxottica of America and our-third party partners use cookies, script code, and other technologies to collect data, monitor your interactions on our site, and/or advertise to you. By clicking "Accept All Cookies", you consent to such use. For more information see our <u>Privacy Policy</u> and <u>Terms of Use</u>. To manage your selections, please see our <u>Cookie Manager</u>.

Request for Judicial Notice (RJN), **Exhibit A** at 1 (then providing "REJECT" or "ACCEPT ALL COOKIES").

As is evident, LensCrafters' Privacy Policy is published via hyperlink on the banner. *Id.* This policy clearly discloses the potential use of pixels and related tracking technologies on the website. RJN, **Exhibit B**. In addition, as a self-proclaimed "active" user of Facebook (Compl. ¶9), Plaintiff must necessarily have agreed to Facebook's Terms and Policies, which specifically disclose the use of the Facebook Pixel across third party websites.[4] *See* Facebook, *Privacy Center –*

---

[3] *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021).

[4] While the website's Privacy Policy, the website's textual content, and the Facebook Privacy Policy are not attached to the Complaint, each is referenced in

*Cookies Policy*, https://www.facebook.com/privacy/policy?subpage=1.subpage.4-InformationFromPartnersVendors.

## III. LEGAL STANDARD

### A. FRCP 12(b)(1) – Lack of Subject Matter Jurisdiction.

A federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized as well as actual and imminent, (2) that the injury is fairly traceable to the challenged action of the defendant, and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). A subject matter jurisdiction challenge under Rule 12(b)(1) may be brought as a facial or factual attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack involves a challenge to the allegations in the complaint being insufficient on their face to constitute federal jurisdiction, whereas a factual attack disputes the truth of the allegations of the complaint. *Id*. In a factual attack, a court may review evidence beyond the complaint's allegations and does not need to assume the allegations in the complaint are true. *Id*. A court may dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) if the

---

the Complaint. *See* Compl. ¶90 (referencing "Defendant's Website Privacy Policy"); *id.* ¶38 & fig. 1 (screenshot of Defendant's Website itself); *id.* ¶42 (referencing and citing Facebook's cookies privacy policy). Accordingly, the Court may consider these materials without converting the Motion to Dismiss into a motion for summary judgment. *See In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1207 n.2 (N.D. Cal. 2014) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

plaintiff does not satisfy Article III standing requirements. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiff has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**B. FRCP 12(b)(6) – Failure to State a Claim.**

A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) where, as here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, allegations that are "merely consistent" with a defendant's liability or that only suggest "the mere possibility of misconduct" do not suffice. *Ashcroft*, 556 U.S. at 678, 679.

**IV. ARGUMENT**

**A. Plaintiff Lacks an Injury-in-Fact Required to Establish Article III Standing.**

In *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), the Supreme Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. In other words, a plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute" grants them the right to

sue; instead they still must allege a "concrete" harm that is more than a "bare procedural violation." *Id.* at 332. The U.S. Supreme Court reiterated this principle in 2021 when it explained that the "Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' … An injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197 (2021). To be concrete, an injury "must be 'de facto'; that is, it must actually exist," and it must be "'real,' and not 'abstract.'" *Id.* at 340 (citing Black's Law Dictionary 479 (9th ed. 2009)); *accord Thomas v. TOMS King (Ohio), LLC*, 997 F.3d 629, 635 (6th Cir. 2021) ("Congress can give *de facto* intangible harms statutory status, but that does not automatically satisfy the injury in fact requirement.").

The point in *TransUnion* is that the injury must bear a "close relationship" to the kind of harm long recognized by American law. *Ellsworth v. Schneider Nat'l Carriers, Inc.*, 2021 WL 6102514, at *5 (C.D. Cal. Oct. 28, 2021) (requiring interests akin to traditional harms). "Traditional tangible harms," such as physical/ monetary harms, qualify as "concrete" injuries. *TransUnion*, 141 S. Ct. at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. at 2205.

Here, Plaintiff does not allege that he suffered any concrete harm or injury in fact—indeed, the words "harm" or "injury" do not appear anywhere in the Complaint with respect to Plaintiff. Plaintiff does not allege any fact regarding his interactions with the website while the pixel was running, whether any information was transferred to Meta through the pixel tags, and if so, what information was transferred. "We need to know what session replay code *actually* captured, not

what session replay code is *capable* of capturing." *In re BPS Direct, LLC*, No. 22-CV-4709, 2023 WL 8458245, at *12 (E.D. Pa. Dec. 5, 2023) (establishing concrete harm depends on what information websites' code actually captured from users, not what session replay code was capable of capturing more generally). *See also Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 WL 7001456, at *2-3 (W.D. Wash. Oct. 24, 2023) (finding a screenshot depicting information potentially disclosed by a website tracker insufficient to demonstrate concrete harm for purposes of Article III standing).

Plaintiff may argue that the hypothetical or general functionality of Facebook pixels on a website is sufficient to create the inference that his "page views" or other information was captured such that it invaded his privacy interest. But, Plaintiff would be wrong. Not only would such an inference be unreasonable, it would directly contradict this Court's precedent in applying the Article III standard. To determine whether a harm is concrete, courts consider "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204. This Court has summarized the Supreme Court's instruction as follows:

> Plaintiff's opposition appears to take the position that any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm. Setting aside the Court's serious doubts about whether Plaintiff has plausibly alleged a violation of CIPA, this approach is at odds with the Supreme Court's recent instruction that 'under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court.'

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023), *judgment entered*, 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023). The Court

explained that "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy." *Id.*, *see also In re BPS Direct*, 2023 WL 8458245, at *1 (website users' allegations that retailers' websites tracked their mouse movements, keystrokes, and other browsing activity were insufficient to plead users were harmed in ways closely related to harms traditionally recognized as basis for privacy-related claims such as intrusion upon seclusion or disclosure of private information, and thus, users failed to allege concrete injury as required for Article III standing to bring claims for violations of Federal Wiretap Act and state privacy statutes). Users must allege more than analogous shopping activity in brick-and-mortar stores. *Id.* at *11; *see also Popa*, 2023 WL 7001456, at *2-3 (dismissing wiretap and invasion of privacy claims for lack of standing where plaintiff failed to specifically "allege that she entered any personally identifiable information" beyond "URLs of web pages visited" and interactions with a public facing website). Here, too, a "page view" is insufficient to implicate a protected privacy interest under common law. Moreover, Plaintiff's allegations are limited to broad claims about a hypothetical website visitor. In fact, Plaintiff's only allegations regarding ***his*** use of the Website are that he "used LensCrafter's [sic] Website for numerous years" and that his "use of the Website consisted, and consists, of scheduling eye exams with Defendant to obtain new eye prescriptions." Compl. ¶7. The remaining allegations in the Complaint relate to hypothetical website visitors rather than Plaintiff's actual interactions with the Website. *Id.* at ¶¶37-51.[5]

---

[5] Plaintiff's allegations that LensCrafters disclosed website "PageView" information revealing interactions on LensCrafters.com is not sufficient to

### B. Plaintiff Fails to Allege the Disclosure or Viewing of Substantive Medical Information as Required by the Act.

Plaintiff pleads that LensCrafters violated section 56.10 of CMIA by installing a Facebook pixel on its website and disclosing patients' medical information without their authorization. *Id.* ¶89. Consequently, Plaintiff seeks damages under Section 56.36(b) of CMIA.

To establish a claim under CMIA Section 56.10, a plaintiff must first allege that a covered health care provider disclosed "medical information regarding a patient. . . without first obtaining an authorization" as required under the law. Cal. Civ. Code § 56.10. Under CMIA, "medical information" is defined as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual. *Id.*

Critically, to state a claim under CMIA, a prohibited release "must include more than individually identifiable information but must also include information relating to medical history, mental or physical condition, or treatment of the

---

establish standing. *See Rahman v. Marriott Int'l, Inc.*, No. SA CV 20-00654-DOC-KES, 2021 WL 346421, at *2 (C.D. Cal. Jan. 12, 2021) (dismissing case for lack of standing where allegedly impacted "information obtained lack[ed] the degree of sensitivity required by the Ninth Circuit to establish injury in fact"); *cf. United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007) ("A person's reasonable expectation of privacy may be diminished in transmissions over the Internet or e-mail that have already arrived at the recipient." (quotation marks and citation omitted)).

individual." *Eisenhower Med. Ctr. v. Superior Court (Malanche)*, 226 Cal. App. 4th 430, 437 (Cal. Ct. App. May 21, 2014). This information must be "substantive, rather than merely administrative." *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725-BAS-WVG, 2022 U.S. Dist. LEXIS 208345, at *10 (S.D. Cal. Nov. 16, 2022). Therefore, information "that merely indicates appointment information is not 'medical information' under the CMIA." *Id.* (citing *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017)). Indeed, the fact that a person is a patient of a care provider or care plan "is not in itself medical information" as defined by CMIA. *Eisenhower*, 226 Cal. App. 4th at 436. Whereas specimen or medical test information may constitute medical information under CMIA, general inferences about appointments do not. *Id. See, e.g.*, *Wilson v. Rater8 LLC*, 2021 WL 4865930, *5 (S.D. Cal. Oct. 18, 2021) (finding that scheduling information, including name of patient, name of doctor, and time of release did not constitute medical information under CMIA).

Here, Plaintiff alleges that the Facebook pixel placed on the LensCrafters' website collected and disclosed to Facebook "medical information" because it collected and disclosed a Facebook ID and information regarding use of the scheduling webpage, i.e., exam page view information. Compl.¶¶ 38, 87. Plaintiff concludes that viewing an eye exam scheduling page shows "patient medical conditions and treatment patients were seeking." *Id.* ¶87. Not so. The screenshots and general information provided only show the disclosure of page view and URL information, and the Facebook ID assigned by Facebook. *Id.* ¶¶38, 39-49. General scheduling information allegedly disclosed by LensCrafters is not substantive medical information under the Act.

In *Wilson*, the court distinguished between "information about [an] appointment" and "information regarding treatment." 2021 WL 4865930, *13 (S.D. Cal. Oct. 18, 2021). The *Wilson* plaintiff alleged that defendants violated

CMIA by disclosing a patient satisfaction survey to a service provider without authorization. *Id.* at *3. This survey included the plaintiff's name, telephone number, treating physician's name, appointment information, scheduling information, and discharge dates and times. *Id.* The *Wilson* court found that this information did not amount to "medical information" under the CMIA. *Id.* at *4-5. "Describing an examination as treatment does not make it so" and information about the appointment cannot be said to constitute information regarding treatment." *Id.* "Even accepting that [a] person was treated, this fact that he or she was a patient is not in itself medical information as defined in section 56.05..." *Id.* at *5, *see also Danforth v. Placentia-Linda Hosp.*, 2023 Cal. Super. LEXIS 67193, *11 (Aug. 31, 2023) (although search terms and page views may have been identifiable, they did not reveal specific medical information sufficient to state a claim under CMIA).

Here, not only does Plaintiff fail to allege the disclosure of identifiable information,[6] Plaintiff does not plausibly allege the disclosure of medical information. Not only does Plaintiff fail to allege a single fact regarding his own interactions on the website and what the pixel did with his information,[7] viewed in

---

[6] "Individually identifiable" means that the medical information includes or contains any element of **personal** identifying information ***sufficient to allow identification of the individual***, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual. Cal. Civ. Code § 56.05(j). Facebook ID numbers do not reveal personal identities.

[7] The Southern District of California recently dismissed a complaint where Plaintiffs failed to provide sufficient facts to support the claim that their medical information was disclosed; rejecting "examples" of website activity by "hypothetical patients" and conclusory allegations devoid of actual support "as to what activities each Plaintiff engaged in on [the] website and what information each Plaintiff provided." *Cousin*, [pin cite at *3].

the light most favorable to Plaintiff, Plaintiff's allegations are limited to mere scheduling information. *Id.* In fact, Plaintiff's allegations do not even contain the same level of specificity as the scheduling information in *Wilson*. Plaintiff here is only able to allege the possible disclosure of page view and URL information indicating that an appointment may have been scheduled. *Id.* Plaintiff does not allege medical information under CMIA as a matter of law.

Second, a Plaintiff must also allege release and actual viewing of the medical information. *Eisenhower*, 226 Cal. App. 4th at 434. That is, a plaintiff may only exercise a private right of action under Section 56.36 of CMIA if they can show that an unauthorized third person in fact "actually viewed" their confidential medical information as a result of the defendant's alleged negligence. *Regents of University of California v. Superior Court*, 220 Cal. App. 4th 549 (2013); *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546 (2014). This is because Section 56.36 only permits a private right of action when there has been an "actual breach of confidentiality," and "[n]o breach of confidentiality takes place until an unauthorized person views the medical information." *Id*. at 1557. More recently, *Vigil v. Muir Med. Group IPA, Inc.*, 84 Cal. App. 5th 197 (2022), reaffirmed the "actual viewing" requirement for a private cause of action under Section 56.36 of the CMIA.[8] Plaintiff utterly fails to allege that Facebook accessed and viewed his event tags, as opposed to general promotional statements about Facebook's profiling practices. *See Cousin*, [pin cite at *8] ("that Meta could collect and view the information of a hypothetical patient does not support Plaintiff's claim.")

---

[8] *Vigil* also established that a breach of confidentiality under the CMIA cannot be shown on a class-wide basis because individual issues would predominate.

**C. Plaintiff Cannot Assert a Wiretapping Claim under California Law.**

Plaintiff also brings a claim for fixed statutory damages resulting from alleged violations of CIPA's wiretapping provisions in Section 631(a). *Id.* ¶¶70-81. Section 631(a) of CIPA contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping" of a wire, line or cable, (2) "willfully attempting to learn the contents or meaning of a message or communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978); *accord In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013). Section 631(a) contains a fourth basis for liability, for any other "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. Cal. Penal Code § 631(a).

Plaintiff cannot, and does not, allege that LensCrafters conducted the alleged wiretapping at issue.[9] Instead, Plaintiff argues that LensCrafters aided and abetted Facebook's surreptitious wiretapping of the LensCrafters website. *Id.* ¶79.

---

[9] A plaintiff cannot proceed against a website operator on the theory that such entity (a party to the purported "communication" with a plaintiff) can "wiretap" its own website. It is undisputed that Section 631(a) only "proscribes third party access to ongoing communications." *Powell v. Union Pac. R. Co.* (E.D. Cal. 2012) 864 F.Supp.2d 949, 955; *Thomasson v. GC Servs. Ltd. P'Ship* (9th Cir. 2008) 321 F. App'x 557, 559 (explaining that California courts interpret the anti-eavesdropping provision of CIPA "to refer to a third party secretly listening to a conversation between two other parties"); *Rogers v. Ulrich* (1975) 52 Cal.App.3d 894, 955 ("only a third party could violate the Section 631 proscription on eavesdropping."). Thus, Section 631(a) does not create liability for someone "who is a 'party' to the communication." *In re Facebook*, 956 F.3d at 607.

**1. Cal. Penal Code §631(a) Does Not Apply to Service Providers.**

A party to the conversation cannot "aid and abet" a third-party *service provider*. Instead, in order to be liable as a party to a conversation for aiding and abetting a third party with eavesdropping, the third parties must be independent parties who mined information and sold it for their own gain. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (held session replay software provider was an extension of website owner (rather than a third-party eavesdropper) that allowed defendant website owner to record and analyze its own data in aid of defendant's business). Mere service or software providers do not fit the bill. *See Yale v. Clicktale, Inc.* (N.D. Cal. Apr. 15, 2021, No. 20-07575) 2021 WL 1428400, at *3 ("Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."); *Licea v. Vitacost.com, Inc.* (S.D. Cal., July 24, 2023, No. 22-1854) 2023 WL 5086893 (website that engages third-party vendor to record website-based communications for website owner's own purpose is not a third party within the meaning of § 631(a)).

Plaintiff admits that Facebook offers business tools to its customers to "help website owners and publishers…integrate with [Facebook] [to] understand and measure their products and services, and better reach and serve people who might be interested…." Compl. ¶¶21-27. Plaintiff asserts that "Defendant chose to include the Facebook Tracking Pixel on its Website." *Id.* ¶28. Plaintiff also alleges that the pixel "enables Facebook…to help Defendant with advertising to its own patients outside the Website." *Id.* ¶32. These allegations reasonably suggest a service provider relationship with Facebook. Realizing this, Plaintiff then boldly concludes, without any factual support as to how the pixel operated on LensCrafters' website specific to *his own use*, that the pixel "enables" Facebook to

"include individual patients among groups targeted by *other* Facebook advertisers relating to the conditions about which patients communicated on Defendant's Website." *Id*. Because the pixel purportedly has this capability, Plaintiff hopes the Court will infer that Facebook indeed used *his* data in this way (if it used it at all) and for its own nefarious gains. The Court should disregard such speculative, conclusory allegations which lack a single iota of factual support. Conclusory allegations regarding a third-party's nefarious role in a Complaint are not sufficient. *See, e.g.*, *Garcia v. Build.com, Inc.* (S.D. Cal., July 13, 2023) 2023 WL 4535531, at *5 (finding allegations of existence of third-party wrongdoer to be speculative—and "[a]t best, this allegation suggests that Defendant employs a third-party software service as a tool to record its own data."); *Valenzuela v. Kroger Co*. (C.D. Cal., June 23, 2023) 2023 WL 4418887, at *3 (allegations that defendant used third-party technology to record communications and share the communications with the third party for data harvesting purposes is still insufficient to rise to a plausible claim); *Licea v. Am. Eagle Outfitters, Inc.* (C.D. Cal. Mar. 7, 2023) 2023 WL 2469630; *Licea v. Cinmar, LLC* (C.D. Cal. Mar. 7, 2023) 2023 WL 2415592, at *7; *Cody v. Boscov's, Inc.* (C.D. Cal. Mar. 2, 2023) 2023 WL 2338302, at *2; *Byars v. Hot Topic, Inc.* (C.D. Cal. Feb. 14, 2023) 2023 WL 2026994, at *9; *Esparza v. Lenox Corp.* (N.D. Cal. Mar. 16, 2023) 2023 WL 2541352, at *2. In short, third-party service providers should be considered extensions of the party absent sufficient detail in pleading wrongdoing.

**2. Plaintiff's Aiding and Abetting Theory Fails Because There Is No Illegal Conduct.**

Under black letter law, an aiding and abetting theory is viable only if Facebook "violated Section 631(a) in some way." *Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023)

(quoting *Williams*, 2022 WL 17869275, at *2). Here, Plaintiff fails to allege facts implicating Facebook under the first clause of Section 631(a) regarding "telegraph or telephone" wires; and Plaintiff fails to allege that Facebook intercepted the "contents" of his "communications" "while in transit" or that it even attempted to read or learn the contents of such communications to implicate the second clause of Section 631(a).

As an initial matter, the first prong of Section 631(a) is inapplicable here. Courts have "consistently" held that that the first clause of Section 631(a) applies only to "communications over telephones and not through the internet." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023); *see also Swarts v. Home Depot*, (N.D. Cal. 2023), 2023 WL 5615453, at *6 (same); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *4 (C.D. Cal. Nov. 27, 2023) (collecting cases and noting that "district courts have concluded that the first clause of § 631 does not cover Internet communications even when the internet is accessed using a telephone"); *Miguel Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *3 (C.D. Cal. Jan. 16, 2024).

This leaves Plaintiff with the second prong of Section 631(a). The second prong of Section 631(a) imposes liability on anyone "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the **contents or meaning** of any message, report, or communication **while the same is in transit or passing over** any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). As a threshold matter, Plaintiff does not allege any content or meaning of any communication that he believes he made through the website and

that should be the end of the inquiry.[10] But even if he did, Plaintiff's strained reading of the transmission requirement must be rejected.

Plaintiff does not allege that any communication could be or was intercepted "while in transit." For an unauthorized interception to occur by a third party, the party must "stop, seize, or interrupt in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.* (9th Cir. 2002) 302 F.3d 868, 878. That is, it "must be acquired during transmission, not while it is in electronic storage." *Id.* In fact, Plaintiff alleges just the opposite. Plaintiff claims that any activity or "communication" sent to LensCrafters is "contemporaneously" and

---

[10] Plaintiff alleges that Facebook intercepted "Plaintiff Gray's communications, including those that contained personally identifying information, protected health information, and related confidential information," but does not identify what information was actually shared with LensCrafters and more importantly, if such information constitutes "content". *See* Compl. ¶10. This is crucial because "contents" is not synonymous with "personal information," and record information such as names and email addresses do not constitute "contents" or "meanings" of a communication. "[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014) (holding "referrer header information ... transmitted to third parties .... does not meet the definition of 'contents,' because these pieces of information are not the 'substance, purport, or meaning' of a communication"). Such "record information" includes, among other things, the "'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer." *Id.* at 1106 (citing 18 U.S.C. § 2702(c)(2)). Data including a URL, "the date and time of the visit, the duration of the visit, [a p]laintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" also does not "constitute[ ] message content." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021). These types of mere record information may reveal facts *about* the communication, but not the contents of the communication itself. *Id.* The term "contents" refers to the intended message conveyed by the communication. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

"concurrent[ly]" sent "to Facebook's servers." Compl. ¶27. Plaintiff later repeats this allegation, claiming that a user's browser "duplicate[s] the communication with Defendant, transmitting it to Facebook's services." *Id*. ¶35. These allegations admit that instead of intercepting any communication "in transit," Facebook receives the communication at its destination on its servers, contemporaneously with LensCrafters. Plaintiff can conclude this is an "interception"—but his allegations say otherwise.[11] *See Keurig Green Mountain, Inc*., 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) (finding plaintiff failed to state a claim under the second clause of Section 631(a) because plaintiff did "little more than restate the pleading requirement of real time interception"); *see also Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (finding "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [someone] is intercepting [the plaintiff's] data in transit"); *Am. Eagle Outfitters*, 659 F. Supp. 3d at 1084-85 (same); *Swarts*, 2023 WL 5615453, at *8 (allegations do not dispel notion that software receives the information "after the chat reaches the [destination]."); *In re Vizio, Inc., Consumer Priv. Litig*. (C.D. Cal. 2017) 238 F.Supp.3d 1204, 1228 (motion to dismiss granted on federal wiretapping claim because plaintiff did not allege with sufficient clarity how the communication was intercepted besides a "conclusory allegation that Vizio intercepted their electronic communications 'during transmission.'"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2024)

[11] Moreover, as a matter of common sense, electronic signals sent over the internet must arrive on some server before computer systems can interpret and display them, including any "pageview". *Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SBJPR, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing § 631 claim without leave to amend because "alleged access of [a] communication upon the completion of its transmission to the proper [destination] is not the sort of act contemplated by [wiretap] law[s]").

(applying *Konop* in the context of a CIPA claim and subsequently dismissing claim where there was no Wiretap Act "interception").

Because Plaintiff does not allege that Facebook improperly acquired during transmission any communication between himself and LensCrafters, the wiretap statute does not apply. *See, e.g.*, *Martin*, 2023 WL 2717636, at *10 (dismissing wiretap claims associated with website enhancement technology for lack of factual allegations that transmissions intercepted while in transit); *Rodriguez*, No. 20-cv-04688-RS, 2022 WL 214552, at *1-2 (dismissing CIPA claim where allegations showed plaintiffs' theory was "recording and then transmission, not interception," noting that baldly "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit").[12]

**D. Plaintiff Has Not Alleged A Legally Cognizable Invasion of Privacy Under State Law.**

Finally, Plaintiff claims that the alleged (hypothetical and uncertain) disclosure of information from the LensCrafters website was an invasion of privacy in violation of the California Constitution. Compl. ¶¶93-99. To establish this claim, Plaintiff must plead "that: (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious as to constitute an egregious breach of the social norms such that the breach is highly offensive." *Cousin*, 2023 U.S. Dist. LEXIS 120211, at *14. *See also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022);

[12] With respect to the third clause of Section 631(a), a plaintiff alleging a CIPA violation "must establish that the information at issue . . . was obtained through a violation of the first or second clauses [of Section 631(a)]." *Google Assistant*, 457 F. Supp. 3d at 827. Because Plaintiff has failed to adequately allege a violation under the first or second clauses of Section 631(a), the allegations as to this clause are also insufficient.

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("The California Constitution and the common law set a high bar for an invasion of privacy claim"). Here, Plaintiff's claim for invasion of privacy must fail because Plaintiff did not have a legally protected privacy interest or reasonable expectation of privacy in *the type of information that may have been disclosed* (i.e., URL page view information) and because any alleged intrusion was not egregious or highly offensive as a matter of law.[13]

**1. Plaintiff Cannot Allege a Legally Protected Privacy Interest or Reasonable Expectation of Privacy.**

California courts do "not recognize[] a general privacy interest in communications." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal 2021). Rather, to show a reasonable expectation of privacy, a plaintiff must allege "an interest in 'precluding the dissemination of misuse of sensitive and confidential information' (referred to as 'information privacy') or 'making intimate personal decisions or conducting personal activities without observation, intrusion, or interference.'" *Id*. at 690-91 (citing *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014)). Whether a plaintiff possesses a legally protected privacy interest is "a question of law to be decided by the court." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (Cal. 1994).

Plaintiff's asserted privacy interest here is to browse LensCrafters website "without observation, intrusion or interference" and "the right to visit and interact with various internet sites without being subjected to wiretaps." Compl. ¶94. But because Plaintiff does not plead wiretapping [*see supra*, Section IV.C.], he cannot

---

[13] Plaintiff seeks "all relief available for invasion of privacy claims under California's Constitution." Compl. ¶99. Defendant notes that "California's constitutional provision protecting the right of privacy supports a cause of action for an injunction, but it does not confer a litigant a privacy right of action for damages." *Cousin*, at *7.

"plausibly plead a protected privacy interest under the California Constitution" or common law. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *5 (N.D. Cal. Dec. 22, 2022) (dismissing invasion of privacy claim under California Constitution based on alleged use of session replay software). The Court need not go any further and can dismiss both invasion of privacy claims on this basis alone. *See id.*; *see also Lopez*, 519 F. Supp. 3d at 690-91 (dismissing constitutional and common law privacy claims because plaintiffs failed to allege specific circumstances showing interception of confidential communications).

Plaintiff also asserts that he has an interest in precluding the disclosure of sensitive confidential communications and protect health information. Compl. ¶94. However, as shown above, Plaintiff fails to allege the disclosure of medical information or health information. In fact, Plaintiff fails to allege the disclosure of any information beyond standard website tracking information, for which there is no legally protected privacy interest. *Yoon*, 549 F. Supp. 3d at 1082.

In sum, Plaintiff fails to meet the high bar for establishing a reasonable expectation of privacy. When assessing whether such an expectation exists, courts consider the sensitivity of the information collected, the manner of collection, and defendant's representations to its customers. *Saleh v. Nike, Inc., et al*., 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (dismissing constitutional privacy claim because plaintiff failed to allege that session replay technology "collected intimate or sensitive personally identifiable information or [that defendants] otherwise disregarded [p]laintiff's privacy choices while simultaneously holding themselves out as respecting them"). As a general matter, courts have been "less willing to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company." *Yoon*, 549 F. Supp. 3d at 1086 (dismissing constitutional privacy claim because failed to allege that session replay tracked plaintiff's data off defendant's website). This is

especially true here, where Plaintiff was notified of the use of tracking technologies through at least a pop-up banner on the website. RJN, Ex. A; Ex. B. Plaintiff's claims under the California Constitution should be dismissed.

**2. Any Alleged Intrusion Was Not Egregious or Highly Offensive.**

Even assuming, *arguendo*, that Plaintiff has a privacy interest or reasonable expectation of privacy in the information that might have been disclosed, Plaintiff cannot allege that the disclosure was "egregious" or "highly offensive". *See Cousin*, No. 22-cv-2040-MMA (DDL) (S.D. Cal. July 12, 2023) at *14.

In considering whether an invasion of a privacy interest is "offensive," courts review all-inclusive factors including the likelihood of serious harm, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *Id.* at *7. The analysis also considers the degree to which the alleged invasion is "unacceptable as a matter of public policy." *Id.* Courts applying the standard have recognized that it represents a "high bar … for an intrusion highly offensive to a reasonable person." *Belluomini v. Citigroup Inc. et al*., 2013 WL 5645168 at *3 (N.D. Cal. Oct. 16, 2013).

Courts have commonly held that "the collection and disclosure of a user's browsing history and personal information on a public website is routine commercial behavior and not highly offensive." *Id.*, citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding that disclosure of user's browsing history URLs and unique ID to third party was not highly offensive); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (finding that disclosure of user's personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third party was not highly offensive); *In re iPhone Application*

*Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding that disclosure of unique device identifier number, personal data, and geolocation information to third party was not highly offensive). While the disclosure of protected medical information may be deemed offensive in certain contexts, as addressed above, Plaintiff has failed to allege disclosure of medical information.

Further still, LensCrafters specifically provided every user of its website with a pop-up notice informing users of its potential use of tracking technology and providing them with a one-click method to opt-out of its use. Therefore, the alleged conduct cannot reach the level of "egregious" or "highly offensive" required to state a claim under the California Constitution.

## V. CONCLUSION

Stripped of its rhetoric and tech jargon, the Complaint boils down to a Plaintiff seeking to bring a federal class action for routine website functionality and hypothesis related to what a Facebook pixel might or could do. Plaintiff was not injured and has failed to allege facts sufficient to state any claims under applicable law. Therefore, and for the reasons discussed herein, the Complaint should be dismissed in its entirety with prejudice.

DATED: March 25, 2024 BLANK ROME LLP

By: */s/ Ana Tagvoryan*
Ana Tagvoryan

Attorneys for Defendant
LUXOTTICA OF AMERICA INC. d/b/a
LENSCRAFTERS

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Defendant Luxottica of America Inc. d/b/a LensCrafters, certifies that this brief contains 6,972 words, which complies with

the word limit of L.R. 11-6.1.

DATED: March 25, 2024

By: */s/ Ana Tagvoryan*
Ana Tagvoryan