**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, IL 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON GRAY, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br><br>LUXOTTICA OF AMERICA INC. d/b/a LENSCRAFTERS,<br>Defendant. | Case No. 8:24-cv-00160-MRA-DFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: August 22, 2024<br>Time: 1:30 p.m.<br>Courtroom: 10B<br>Judge: Hon. Monica Ramirez Almadani |

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 1

ARGUMENT ........ 3

I. PLAINTIFF HAS ARTICLE III STANDING ........ 3

II. PLAINTIFF SUFFICIENTLY ALLEGES THAT DEFENDANT VIOLATED CIPA ........ 6

A. CIPA Applies to Defendant's Conduct ........ 6

B. Plaintiff Alleges that Facebook Violated CIPA § 631(a) ........ 12

1. CIPA § 631(a) Applies to Internet Communications ........ 12

2. Plaintiff Alleges Facebook Violated Clause Two of CIPA § 631(a) ........ 13

a. Facebook Intercepted the Contents of Communications ........ 13

b. Facebook Intercepted Communications While in Transit ........ 15

III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF THE CMIA ........ 16

A. Plaintiff Sufficiently Pleads that Defendant Disclosed His Medical Information ........ 16

B. Plaintiff Alleges Facebook Viewed Plaintiff's Medical Information ........ 18

IV. PLAINTIFF SUFFICIENTLY ALLEGES INVASION OF PRIVACY UNDER STATE LAW ........ 20

A. Plaintiff Has a Reasonable Expectation of Privacy ........ 20

B. Defendant's Intrusion Was Highly Offensive and Egregious ........ 21

CONCLUSION ........ 22

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 9

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 17

*Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) .......... 11

*Bonnichsen v. United States*, 367 F.3d 864 (9th Cir. 2004) .......... 7

*Brown v. Google LLC*, 685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 13

*Byars v. Goodyear Tire & Rubber Co.*, 654 F.Supp.3d 1020 (C.D. Cal. 2023) .......... 4, 12

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 6

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 15, 18

*Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*, 34 Cal. Rptr. 3d 439 (2005) .......... 17

*Cousin v. Sharp Healthcare,* 681 F.Supp.3d 1117 (S.D. Cal. 2023) .......... 12

*Cousin v. Sharp Healthcare*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) .......... 1, 14, 17, 19

*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 9, 12

*Doe v. Beard*, 63 F.Supp.3d 1159 (C.D. Cal. 2014) .......... 21

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................................1

*Doe v. N. Cal. Fertility Med. Ctr.*,
2024 WL 246178 (E.D. Cal. Jan. 23, 2024).........................................................19

*Doe v. Regents of Univ. of California*,
672 F.Supp.3d 813 (N.D. Cal. 2023) ....................................................................1

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017).................................................................................3

*Eisenhower Med. Ctr. v. Superior Ct.*,
172 Cal. Rptr. 3d 165 (2014)...............................................................................17

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sept. 5, 2023).......................................................10

*Graham v. Noom*,
533 F.Supp.3d 823 (N.D. Cal. 2021) ...................................................................11

*Harris v. Harris*,
935 F.3d 670 (9th Cir. 2019).................................................................................7

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)........................................................19, 21

*In re BPS Direct, LLC*,
2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) ...........................................................5

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) ...................................................................21

*In re Facebook, Inc., Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...........................................................................passim

*In re Google RTB Consumer Privacy Litigation*,
606 F.Supp.3d 935 (N.D. Cal. 2022) ..........................................................21, 22

*In re Lenovo Adware Litig.*,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)........................................................7

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) .........................................1, 13, 20, 21

*In re Meta Pixel Healthcare Litig.*,
2024 WL 3338833 (N.D. Cal. Jan. 29, 2024) .......... 17

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F.Supp.3d 1284 (S.D. Cal. 2020) .......... 19

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) .......... 16

*In re Yahoo Mail Litig.*,
7 F.Supp.3d 1016 (N.D. Cal. 2014) .......... 16

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 14

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 4

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023) .......... 8, 10, 11

*Javier v. Assurance IQ, LLC,*
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 12

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 3, 4, 5

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 4

*Licea v. Cinmar, LLC*,
659 F.Supp.3d 1096 (C.D. Cal. 2023) .......... 3

*Licea v. Old Navy, LLC*,
669 F.Supp.3d 941 (C.D. Cal. 2023) .......... 12

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 20

*People v. Snyder*,
22 Cal. 4th 304 (2000) .......... 7

*Popa v. PSP Grp., LLC*,
2023 WL 7001456, (W.D. Wash. Oct. 24, 2023) .......... 5, 6

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................3, 8, 9, 15

*Ribas v. Clark*,
696 P.2d 637 (1985)....................9, 10, 11, 15

*Rodriguez v. Google, LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................16

*Rogers v. Ulrich*,
125 Cal. Rptr. 306 (Ct. App. 1975)....................10

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021)....................8, 9, 11

*Stasi v. Inmediata Health Grp. Corp.*,
501 F.Supp.3d 898 (S.D. Cal. 2020)....................19, 22

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023)....................10

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023)....................9, 10, 12

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)....................9, 12

*Williams v. Facebook, Inc.*,
384 F.Supp.3d 1043 (N.D. Cal. 2018)....................21

*Wilson v. Rater8 LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)....................18

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023)....................10

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023)....................1, 3, 11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................7, 8, 11, 12

**STATUTES**

Cal. Civ. Code § 56.10 ........ 1

Cal. Civ. Code § 56.10(a) ........ 16

Cal. Penal Code § 631 ........ passim

Cal. Penal Code § 631(a) ........ passim

Cal Civ. Code § 56.05(i) ........ 16, 17

## INTRODUCTION

Plaintiff Brandon Gray ("Plaintiff") filed this action against Defendant Luxottica of America Inc. d/b/a LensCrafters ("Defendant" or "LensCrafters") for disclosing his private medical information to third parties without his consent in violation of California's privacy statutes and the right to privacy under the California Constitution. Defendant moves to dismiss each claim, arguing that Plaintiff failed to sufficiently allege the unlawful disclosure of his protected health information ("PHI"). On the contrary, Plaintiff makes specific allegations regarding: (1) the nature of his communications with Defendant—i.e., about the type of medical treatment he sought; and (2) Defendant's nonconsensual disclosure of the PHI to third parties via tracking technology installed on its website. As discussed below, these allegations are sufficient to allege: (1) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (2) violations of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10, *et seq.*; and (3) invasion of privacy under California's Constitution.

Numerous Courts have denied motions to dismiss in cases involving the same, or similar, technology. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) (denying motion to dismiss where plaintiffs alleged that hospital systems surreptitiously shared patient health information with Facebook); *Doe v. Regents of Univ. of California*, 672 F.Supp.3d 813, 819 (N.D. Cal. 2023); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 793 (N.D. Cal. 2022); *Cousin v. Sharp Healthcare*, 2023 WL 8007350, at *1 (S.D. Cal. Nov. 17, 2023) ("*Cousin II*"). This Court should follow suit and deny Defendant's motion to dismiss in its entirety.

## STATEMENT OF FACTS

Defendant provides eye health care services, including routine eye exams to maintain eye health care. Dkt. 1 ¶ 19. At relevant times, patients, including Plaintiff, communicated with Defendant via its website—www.lenscrafters.com (the

"Website")—to schedule eye exams and obtain new eye prescriptions, among other things. *See id.* ¶¶ 7, 20, 38. Unbeknownst to patients, including Plaintiff, Defendant had embedded, integrated and installed into the Website software technology developed by Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), and known as the Facebook Pixel (the "Pixel"). *See id.* ¶¶ 10, 37-49. By embedding, integrating and installing the Pixel into the Website, Defendant aided Facebook in simultaneously and concurrently intercepting patients' confidential Website communications with Defendant that contained personally identifiable information ("PII") and PHI. *Id.* ¶¶ 21-36, 37-49.

The Pixel is a "piece of code" offered "to advertisers" that "tracks [ ] people and [the] type of actions they take." *Id.* ¶ 27; *see also id.* ¶¶ 21-26, 28-49. While embedded into the Website, the Pixel allowed Facebook to contemporaneously intercept patient communications, such as the type of medical treatment sought and the type of appointment booked. *Id.* ¶¶ 21-49.

Plaintiff used the Website to communicate with Defendant, and these communications included the disclosure of PII and PHI. *Id.* ¶ 7. Specifically Plaintiff used the Website to schedule eye exams in order to obtain new eye prescriptions. *Id.* As a result of Defendant embedding, integrating and installing the Pixel into the Website, Facebook intercepted Plaintiff's communications with Defendant. *Id.* ¶¶ 7, 21-49. The intercepted communications included detailed, full-string URLs that set forth detailed information regarding the communication at issue. *See id.* ¶ 38. Thus, when Plaintiff scheduled an eye-exam with Defendant, the information intercepted by Facebook included the terms "eye-exam" and "reschedule," as well as Plaintiff's Facebook ID, which was a unique identifier assigned to Plaintiff by Facebook. *Id.* ¶¶ 38-39.

Facebook used the intercepted data to create datasets that allowed "advertisers to reach precise audiences based on specified targeting types." *See id.* ¶¶ 23-36. For instance, "[a]fter collecting and intercepting [the data], Facebook processed it,

analyzed it, and assimilated it into datasets like Core Audiences and Custom Audiences," which datasets allowed Facebook to accurately target advertising for its customers, including Defendant. *See id.* ¶¶ 21-49.

After communicating with Defendant via the Website, and as a result of Defendant aiding Facebook in intercepting Plaintiff's communications with Defendant, Plaintiff received advertisements on Facebook and Instagram relating to vision care. *Id.* ¶ 8; *see also id.* ¶¶ 21-49. Plaintiff and Class members never consented, agreed to, authorized, or otherwise permitted Defendant to disclose their PII or PHI to any of these entities. *Id.* ¶¶ 10, 50-51, 75.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Defendant contends Plaintiff lacks Article III standing because he "does not allege that he suffered any concrete harm or injury in fact[.]" Dkt. 17-1 at 16.[1] Not so.

Consumers have standing when they allege violations of privacy statutes because "[v]iolations of the right to privacy have long been actionable at common law." *See In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook Tracking*"). "A right to privacy encompasses the individual's control of information concerning his or her person." *Id.*; *see also Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (allegations of defendant unlawfully recording and storing cellphone communications plausibly articulate an Article III injury because they claim violation of a substantive privacy right); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (same); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019); *Yockey*, 688 F. Supp. 3d 962; *Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096 (C.D. Cal. 2023). Notably, CIPA

[1] Citations to docketed entries are to the CM/ECF-stamped page numbers.

"codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Facebook Tracking*, 956 F.3d at 598.

In determining whether an Article III injury exists, "courts have rejected" the position that "[p]laintiffs must plead the exact communications they had with the [Defendant]." *See James v. Walt Disney Co.*, 2023 WL 7392285, at *11 (N.D. Cal. Nov. 8, 2023); *see also Byars v. Goodyear Tire & Rubber Co.*, 654 F.Supp.3d 1020 (C.D. Cal. 2023) (Finding "no requirement that Byars specifically allege the exact contents of her communications with Goodyear."). And whether the information intercepted was "sensitive enough" to constitute an injury is a premature factual question. *See, e.g., Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ("[D]eterminations of the egregiousness of the privacy intrusion are not usually resolved at the pleading stage."). Rather, a plaintiff "merely needs to show that the contents were not record information such as her name and address." *James*, 2023 WL 7392285, at *11 (quotation omitted).

Contrary to Defendant's contention, Plaintiff alleges he suffered an Article III injury because he alleges that Defendant violated his substantive privacy rights. The Ninth Circuit's opinion in *Jones* is instructive. There, the plaintiff alleged his "private communications were unlawfully recorded from [his] cellphone and permanently stored on his Ford vehicle in violation of the [Washington wiretapping statute]." The Ninth Circuit, noting that "the relevant law is settled[,]" held that those allegations sufficed for Article III standing because "they claim[ed] violation of a substantive privacy right." *Jones*, 85 F.4th at 574.

Similar to *Jones*, here, Plaintiff alleges that Defendant: (1) unlawfully aided Facebook in intercepting his confidential and sensitive Website communications with Defendant, including communications to schedule eye exams with Defendant to obtain new eye prescriptions (Dkt. 1 ¶¶ 7, 10, 37-49); and (2) deprived Plaintiff of his privacy rights by engaging in that alleged conduct. *Id.* ¶ 51. As a result of the interceptions, Plaintiff "received advertisements on Facebook and Instagram relating

to vision care." *Id.* ¶ 8. Plaintiff did not consent to the alleged surreptitious interceptions. *Id.* ¶ 10. As in *Jones*, Plaintiff's allegations, and the reasonable inferences therefrom, sufficiently allege a violation of Plaintiff's substantive privacy rights.

Ignoring well-settled law and Plaintiff's allegations and the reasonable inferences therefrom, Defendant contends Plaintiff has not sufficiently alleged an Article III injury because: (1) "the words 'harm' or 'injury' do not appear anywhere in the Complaint with respect to Plaintiff; and (2) Plaintiff does not allege any fact regarding his interactions with the website while the pixel was running, whether any information was transferred to [Facebook] through the pixel tags, and if so, what information was transferred." Dkt. 17-1 at 17. However, as discussed above, Plaintiff has sufficiently alleged a violation of his substantive privacy rights. Moreover, Plaintiff's allegations and the reasonable inferences therefrom demonstrate that Plaintiff communicated with Defendant via the Website at times when the Pixel was embedded, installed and integrated into the Website, resulting in Plaintiff receiving advertisements related to those sensitive and confidential communications. *See* Dkt. 1 ¶ 8.

Defendant's cases are not binding on this Court and are otherwise distinguishable. Unlike here, *In re BPS Direct, LLC*, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023), involved session replay software (not Pixel software), and the plaintiffs did not: (1) allege that the defendants shared private medical information or financial data; or (2) identify the personal information communicated to the defendants. *Id.* at *1, 6. Here, Plaintiff alleges that he entered PHI and PII into the Website and that Facebook intercepted not only that PHI and PII but also his Facebook ID, which allowed the information to be connected directly to Plaintiff. *See* Dkt. 1 ¶¶ 7-10, 38-50.

Similarly, unlike here, *Popa v. PSP Grp., LLC* , 2023 WL 7001456, (W.D. Wash. Oct. 24, 2023), involved session replay software (not Pixel software), and the

plaintiff did not allege that she entered any personally identifiable information into the relevant website, that the defendants captured any such information or that the defendants were able to connect the information collected to the plaintiff's identity. *Id.* at *5. As discussed above, Plaintiff factual allegations include the information missing in *Popa.*

Finally, *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023), predates *Jones*. Moreover, unlike here, the plaintiff in *Byars* did not allege that he communicated with the defendant via the defendant's website or that he disclosed any sensitive information to the defendant. *Id.* at *2-3.

## II. PLAINTIFF SUFFICIENTLY ALLEGES THAT DEFENDANT VIOLATED CIPA

### A. CIPA Applies to Defendant's Conduct

Defendant contends it cannot be liable for aiding Facebook's interception of Website communications because Facebook was a third-party service provider, not an "independent part[y] who mined information and sold it for [its] own gain." Dkt. 17-1 at 25. The contention lacks merit.

#### 1. Defendant's Contention Ignores CIPA's Plain Language

As a threshold matter, Defendant's argument lacks merit because it ignores CIPA's plain language. CIPA § 631(a) provides:

> (a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner,
>
> [i] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system [Clause One], or
>
> [ii] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line,

> or cable, or is being sent from, or received at any place within this state [Clause Two], or
>
> [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained [Clause Three], or
>
> [iv] or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section [Clause Four] . . . .

Cal. Penal Code § 631(a) (line breaks and bracketed numbers added).

Statutory interpretation begins "with the language of the statute itself." *Harris v. Harris*, 935 F.3d 670, 673 (9th Cir. 2019). In relevant part, CIPA § 631(a) provides for liability for "any person who . . . aids, agrees with, employs, or conspires with *any person or persons* to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a) (emphasis added); *see In re Lenovo Adware Litig*., 2016 WL 6277245, at *8 (N.D. Cal. Oct. 27, 2016) (denying motion to dismiss CIPA claim based solely on allegation that the defendant "aided, agreed with, or conspired with" another defendant to violate section 631). Both the Ninth Circuit and California Supreme Court have held that the term "'[a]ny person' means exactly that, and may not be interpreted restrictively." *Bonnichsen v. United States*, 367 F.3d 864, 874 (9th Cir. 2004); *see People v. Snyder*, 22 Cal. 4th 304, 314 (2000).

The purpose behind the above-quoted language of § 631(a) is simple: "a conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021). Thus, § 631(a) does not exempt participants to a conversation who permit third parties to eavesdrop on that conversation. *See* Cal. Penal Code § 631(a). Consistent with the plain language of § 631(a), courts have routinely held liable defendants who aid, agree

with, employ, or otherwise enable a third-party service provider to wiretap consumers to their websites. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 900 (N.D. Cal. 2023) ("Defendants argue that Plaintiff would have no claim if Assurance had created the TrustedForm software itself. This is true. But under Section 631, it has always mattered who is holding the tape recorder . . . .") (cleaned up); *Saleh v. Nike, Inc.,* 562 F.Supp.3d 503, 521 (C.D. Cal. 2021) (denying motion to dismiss CIPA claim for aiding unlawful interception); *Yoon*, 549 F. Supp. 3d at 1083 (same); *Revitch*, 2019 WL 5485330, at *2 ("the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing.").

Defendant's argument rests on an improper reading of § 631(a). The plain language of § 631(a) makes clear that it applies to "any person who . . . aids, agrees with, employs, or conspires with *any person or persons* . . . ." Cal. Penal Code § 631(a). When the statute is properly construed, Defendant's alleged misconduct constitutes a clear violation of § 631(a). After describing Facebook's business model (Dkt. 1 ¶¶ 22-23) and the fact that Facebook offers the Pixel to its customers in order to track website visitors and the actions that they take (*id.* ¶¶ 25, 27), Plaintiff alleges that "Defendant chose to include the Pixel on its Website." *Id.* ¶ 28. In other words, Plaintiff alleges that "any person"—*i.e.*, Defendant—aided, agreed with or conspired with "any person"—*i.e.*, Facebook—to violate § 631(a) by using the Pixel to allow Facebook to intercept patients' confidential communications with Defendant via the Website.

**2. Facebook Is an Independent Third Party**

Defendant's argument that it is not liable under § 631 because Facebook is not an "independent third part[y] who mined information and sold it for [its] own gain" (Dkt. 17-1 at 25), is premature, contrary to § 631(a)'s and legislative purpose and California Supreme Court precedent. To begin, the issue of whether Facebook is an independent third party, as Plaintiff alleges, or merely a passive tool is a "question of fact for a jury, best answered after discovery . . . ." *Yoon*, 549 F. Supp. 3d at 1081;

*see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) (same). As such, the Court should not decide the issue at the pleading stage. *See Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *4-6 (C.D. Cal. Nov. 27, 2023).

Should the Court choose to address the merits of Defendant's argument at this early stage, it should determine that the argument lacks merit. The purpose of § 631 is to: (1) prevent the "simultaneous dissemination [of the contents of a conversation] to an unannounced second auditor, whether that auditor be a person or mechanical device"; and (2) preserve the right of the parties to the conversation to "control the nature and extent of the firsthand dissemination of [their] statements." *Ribas v. Clark*, 696 P.2d 637, 640–41 (1985); *see also Facebook Tracking*, 956 F.3d at 608 ("[T]he Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or an unseen auditor.") (internal quotes omitted).

Courts applying § 631 to software-as-a-service ("SaaS") providers such as Facebook have held that providers who are "separate legal entit[ies] that offer[] 'software-as-a-service' and not merely a passive device" are third-party wiretappers. *Saleh*, 562 F. Supp. 3d at 520. Similarly, courts have held that separate corporate entities providing software services are distinct third-party entities "learning the contents of communications in real time." *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023); *see also Revitch*, *supra,*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (finding plaintiff adequately alleged defendant was a third party wiretapper); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) (same).

Another approach taken by courts in determining if a SaaS provider is an independent third party is to consider whether the provider "ha[s] the *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [which] has no independent capability to divulge the recording for any other purpose

but that of its owner)." *Javier*, 649 F. Supp. 3d at 900 (emphasis in original). This approach does not require that the provider use the data for another purpose, only that the provider is capable of doing so. *Id.* (third-party provider where the provider "can use that information for other purposes, even if [the plaintiff has not alleged that they have done so in this case"). Courts adopting this approach have held that the providers are separate corporate entities because their capabilities are "significantly more sophisticated than the tape recorder in *Rogers*."[2] *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023) (SaaS provider was a third party wiretapper where "Plaintiff alleges that ASI's capabilities were significantly more sophisticated than the tape recorder in *Rogers*," including because provider "collect[ed] and store[d] chat transcripts"); *Javier*, 649 F.Supp.3d at 900 (SaaS provider was a third party wiretapper where "[the plaintiff] pleads that [SaaS provider] monitors, analyzes, and stores information about visits to [the defendant's websites"); *Valenzuela*, 686 F. Supp. 3d 969 (finding that "software that allows a third party to capture messages in real time and later perform data analysis" should qualify as a third-party wiretapper); *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023); *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *5 (C.D. Cal. Nov. 20, 2023).

In *Ribas*, *supra*, a seminal and controlling California Supreme Court decision that Defendant fails to cite, a friend to the wife of a married couple eavesdropped on a conversation between the husband and wife. 696 P.2d 637, 639. The husband did not allege that the friend used the wiretapped information for her own benefit, only that she listened in on a conversation to which she was not a party, at the direction of

---

[2] In *Rogers v. Ulrich*, 125 Cal. Rptr. 306 (Ct. App. 1975), the defendant installed a tape recorder jack on his telephone to record conversations with city officials, which he would later relay in part to local radio stations. *Id.* For purpose of the wiretapping statute, the court found that the use of a tape recorder was more akin to transcribing a message between participants rather than intercepting a message. *Id.* at 309.

and for the benefit of the wife. *Id.* On those facts, the California Supreme Court held that the friend was a third party wiretapper under § 631(a). 696 P.2d at 641. Indeed, the Court went as far as to contemplate liability under § 631 for an employer who "*request[s] a secretary to secretly transcribe a conversation over an extension*," even though the secretary's recording was for the sole benefit of their employer. *Id.* (emphasis added); *see also Saleh*, *supra,* 562 F.Supp.3d at 520 (finding SaaS provider is a third party wiretapper because it "is a separate legal entity that offers 'software-as-a-service' and not merely a passive device").

Regardless of the approach, Facebook is an independent third-party eavesdropper for which Defendant can be held liable under § 631(a). The Complaint makes clear that Facebook does not simply record Website communications between patients and Defendant. Rather, Facebook intercepts the communications in order to use those communications in connection with its advertising business and to assist its customers in creating effective targeted advertising campaigns. *See* Dkt. 1 ¶¶ 8, 24-27, 29-31, 32-36. In other words, Facebook does not merely offer a passive recording device, but rather software-as-a-service. *See Yoon*, 549 F. Supp. 3d at 1081 (Plaintiff alleges that Facebook has the capability to "capture[], store[], and interpret[] [their] real-time data—which extends beyond the ordinary function of a tape recorder." On these allegations, Facebook engaged in active conduct that far exceeded that of the friend or hypothetical secretary in *Ribas.*

*Graham v. Noom*, 533 F.Supp.3d 823 (N.D. Cal. 2021) is not sound authority. In *Graham*, the court held that a SaaS vendor like Facebook merely "provide[d] a tool—like the tape recorder in *Rogers*—that allow[ed] [its client] to record and analyze its own data in aid of [its] business." 533 F.Supp.3d 832. But "*Graham* and its progeny are based on a misinterpretation of § 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey*, 688 F. Supp. 3d 962; *see also*, *e.g., Javier*, 649 F.Supp.3d at 900 (rejecting *Graham)*; *Balletto v. Am. Honda Motor Co*.,

2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *Valenzuela*, 686 F. Supp. 3d 969 (same); *Valenzuela v. Super Bright LED*s, 2023 WL 8424472, at *7 (same); *D'Angelo*, 2023 WL 7006793, at *7–8 (same).

**B. Plaintiff Alleges that Facebook Violated CIPA § 631(a)**

According to Defendant, even if Defendant can be held liable for aiding[3] Facebook's interception of patients' communications with Defendant via the Website, Plaintiff fails to allege facts showing that Facebook engaged in any underlying violation of CIPA § 631(a). Dkt. 17-1 at 26-30. The argument fails.

**1. <u>CIPA § 631(a) Applies to Internet Communications</u>**

Defendant argues that Clause One of CIPA § 631(a) does not apply to internet communications and, therefore, Facebook could not have violated it. Dkt. 17-1 at 27. However, "[c]ourts have determined that § 631(a) applies to internet communications." *Byars*, 654 F. Supp. 3d at 1027; *see also Javier v. Assurance IQ, LLC,* 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, § 631(a) applies to internet communications."); *Licea v. Old Navy, LLC*, 669 F.Supp.3d 941, 945 (C.D. Cal. 2023); *Yoon*, *supra,* 549 F.Supp.3d at 1080. While Defendant cites cases holding that Clause One does not apply to internet communications (Dkt. 17-1 at 27), Plaintiff respectfully submits that the Court should look to those cases reaching the opposite conclusion.

---

[3] Defendant repeatedly, and incorrectly, refers to Defendant "aiding and abetting" Facebook. *See, e.g.*, Dkt. 17-1 at 26 (referring to an "aiding and abetting theory"). § 631(a) only requires "aiding" and does not incorporate the criminal standard of "aiding and abetting." *See Cousin v. Sharp Healthcare,* 681 F.Supp.3d 1117, 1129-30 (S.D. Cal. 2023).

**2. <u>Plaintiff Alleges Facebook Violated Clause Two of CIPA § 631(a)</u>**

**a. <u>Facebook Intercepted the Contents of Communications</u>**

Defendant contends the Complaint does not allege a violation of CIPA § 631(a) because "Plaintiff has not alleged any content or meaning of any communication that he believes he made through the website . . . ." Not so.

Clause Two of CIPA § 631(a) makes it unlawful for a person to "learn the contents or meaning of any . . . communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" without consent. Cal. Penal Code § 631(a). "[F]ull-string, detailed URLs" that include "'the particular document within a website that a person views'" will result in "URLs [that] could divulge a user's personal interests, queries, and habits" sufficient to constitute communications under CIPA. *Facebook Tracking,* 956 F.3d at 605. Thus, a URL can contain "content" where it includes information beyond basic identification and address information:

> "Contents" refers to the "intended message conveyed by the communication"—it does not include record information regarding the characteristics of the message that is generated in the course of the communication . . . . *And while a URL that includes "basic identification and address information" is not "content," a URL disclosing a "search term or similar communication made by the user" "could constitute a communication" under the statute.*

*Meta Pixel*, 647 F.Supp.3d at 795 (internal citations omitted) (emphasis added).

In *Meta Pixel,* the court distinguished between URLs that merely reveal information such as "the name of a Facebook user or group" and URLs that include both the path and the query string—with the more detailed URLs containing communications. *Id.; see also Brown v. Google LLC*, 685 F.Supp.3d 909, 936 (N.D. Cal. 2023) (distinguishing between full-string, detailed URLs and mere IP addresses). More recently, the court in *Cousin II* held that full-string URLs that contained information "such as specialty healthcare providers and treatments for

medical conditions" "plausibly conveyed content: their [Protected Health Information]." 2023 WL 8007350, at *5. Accordingly, the court held that the URLs constituted the "contents" of a communication. *Id.*

Here, Plaintiff has alleged that Facebook intercepted the contents of his communications. Plaintiff alleges that Facebook intercepted and collected full-string, detailed URLs that disclosed the particular document within the Website that patients, including Plaintiff, viewed. Dkt. 1 ¶¶ 10, 27, 28, 35, 37, 38, 75, 76. As discussed above, Plaintiff used the Website to schedule eye exams in order to obtain new eye prescriptions. *Id.* ¶ 7. Plaintiff further alleges that when patients scheduled eye exams through the Website, Defendant transmitted that communication to Facebook by "sharing 'PageView' events detailing information about which page on Defendant's website the patient was viewing." *Id.* ¶ 38. The PageView event information shared with Facebook via full-string, detailed URLs included the terms "eye-exam" and "reschedule." *Id.* (URLs shown in Fig. 2). In other words, the URLs at issue included private medical information revealing the *nature* of the appointment booked or the treatment being sought by a particular patient. *See id.* ¶ 38 (Figs. 1-2).

Defendant's reliance on *In re Zynga Privacy Litig*., 750 F.3d 1098 (9th Cir. 2014) (Dkt. 17-1 at 28, n.10) is misplaced. In *Zynga*, the Ninth Circuit distinguished between "record information regarding the characteristics of the message that is generated in the course of the communication" and communications. 750 F.3d at 1106. Ignoring Plaintiff's allegations, Defendant contends any URLs intercepted by Facebook contain only record information, not communications. Dkt. 17-1 at 28, n.10. However, as discussed above, the URLs at issue contained far more than record information.

**b. Facebook Intercepted Communications While in Transit**

Defendant also argues that Plaintiff does not adequately allege that the communications were intercepted "in transit." Dkt. 17-1 at 28-30. CIPA § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, *or* is being sent from, *or* received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). Thus, CIPA § 631 penalizes third parties who intercept communications "while the communication[s] [are] either 'in transit' or [are] 'being sent from' and 'received at' a place within this state." *Ribas*, 696 P.2d 637, 640 (emphasis added); *Revitch*, 2019 WL 5485330, at *2 ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis" because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications").

Based on CIPA's plain language, even if Plaintiff's communications were not intercepted "in transit"—and they were—his intercepted communications were "sent from, or received at, a place within this state." *See* Dkt. 1 ¶¶ 4, 6. As such, Plaintiff alleges an underlying violation of Clause Two.

Notably, Plaintiff has alleged detailed facts showing that the Pixel intercepts user communications in transit:

> When a user accesses a website hosting the Facebook Pixel, Facebook's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. At relevant times, two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's Website—Defendant's own code, and Facebook's embedded code.

Dkt. 1 ¶ 26; *see also id.* ¶ 34. Accordingly, Plaintiff sufficiently alleges his communications were intercepted while "in transit" prior to reaching their final destination. No additional allegations are required. *See Campbell v. Facebook Inc.*,

77 F. Supp. 3d 836, 848 (N.D. Cal. 2014); *In re Yahoo Mail Litig*., 7 F.Supp.3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations").

The cases relied on by Defendant (Dkt. 17-1 at 29) are distinguishable. Those cases involved substantially different technology where it was clear the data was not "in transit" as it was stored somewhere else first prior to being forwarded or accessed by the defendant. *See, e.g., Rodriguez v. Google, LLC*, 2022 WL 214552, *1-2 (N.D. Cal. Jan. 25, 2022) (finding data is not "in transit" where it is first logged and then a second copy is transmitted); *In re Vizio, Inc., Consumer Priv. Litig*., 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) ("in transit" element missing where complaint showed data was transmitted to defendant "significantly after" it arrived at Smart TV). !

## III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF THE CMIA

Defendant asserts that the Court should dismiss Plaintiff's CMIA claim because Plaintiff "fail[s] to allege the disclosure of identifiable information" and "does not plausibly allege the disclosure of medical information." Dkt. 17-1 at 21-22. Not so.

### A. Plaintiff Sufficiently Pleads that Defendant Disclosed His Medical Information

Under the CMIA, a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization . . . ." Cal. Civ. Code § 56.10(a). "Medical information means any individually identifiable information, in electronic or physical form . . . regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." Cal Civ. Code § 56.05(i) [emphasis added]. "'[I]ndividually identifiable' means that the medical information includes or contains *any element* of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address . . . or

other information that, alone or *in combination with other publicly available* information reveals the identity of the individual." *Id.* (emphasis added).

California courts have interpreted the CMIA to prohibit disclosure of the nature of a patient's treatment. *See, e.g., Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*, 34 Cal. Rptr. 3d 439, 442 (2005) (distinguishing between disclosure of a person's status as a patient of a healthcare facility and disclosure of the nature of the patient's treatment); *cf. Eisenhower Med. Ctr. v. Superior Ct.*, 172 Cal. Rptr. 3d 165, 168–170 (2014) (compromised information amounted only to "individually identifiable information" because it only "encompass[ed] demographic or numeric information that does not reveal medical history, diagnosis, or care."). While the fact that a person is a patient at a particular facility may not communicate substantive information regarding a medical condition, treatment or history, revealing the nature of the treatment does. *Colleen M*., 34 Cal.Rptr.3d at 442. Notably, information regarding appointment bookings falls within the scope of "medical information" under the statute. *Cousin II*, 2023 WL 8007350 at *3-4 (allegations that plaintiffs used healthcare website to book appointments stated a CMIA claim); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (allegations regarding "disclosure of information that 'reveal[s] medical history, diagnosis, or care' within the meaning of the CMIA, including appointment bookings," stated a CMIA claim); *In re Meta Pixel Healthcare Litig.*, 2024 WL 3338833, at *1 (N.D. Cal. Jan. 29, 2024) (finding plaintiffs plausibly pled privacy-based claims, where they identified "the specific types of information they provided to their healthcare providers that they believe Meta collected without their consent[,]" including "the health conditions for which they sought treatment or services, as well as examples of their queries, appointment requests, or other information and services which they communicated with their providers"). Here, Plaintiff sufficiently alleges the disclosure of his medical information to state a CMIA claim. Plaintiff alleges that: (1) he "used LensCrafter's Website for numerous

years"; and (2) his "use of the Website consisted of, and consists, of scheduling eye exams with Defendant to obtain new eye prescriptions." Dkt. 1 ¶ 7. Moreover, Plaintiff alleges that when: (1) "a patient enter[s] Defendant's Website and beg[ins] the process of booking an eye exam, Defendant transmit[s] the fact that the patient [is] booking an eye exam to Facebook through the [Pixel]"; (4) "booking an eye exam, the PageView event information shared with Facebook includes the terms "eye-exam" and "reschedule." *Id.* ¶ 38. Plaintiff also alleges that "[e]ach time Defendant sent this activity data," to Facebook "it also disclosed a patient's personally identifiable information, including their Facebook ID ("FID") . . . . With [the FID], any ordinary person can look up the user's Facebook profile and name." *Id.* ¶ 39. In short, Plaintiff alleges that Defendant disclosed the type of treatment sought (an eye exam), whether an appointment was being rescheduled, and the FID, which is the equivalent of a patient's name. Plaintiff has thus alleged that Defendant disclosed medical information in violation of the CMIA.

Defendant's reliance on *Wilson v. Rater8 LLC*, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) (Dkt. 17-1 at 21-23), is misplaced. Unlike *Desert Care Network*, that held that appointment information qualified as medical information under the CMIA, *Wilson* is an out-of-district case with no precedential value. Moreover, *Wilson* is distinguishable on its facts. Unlike here, the complaint in *Wilson* did not "contain specific allegations about what information the CMIA Defendants disclosed to rater8 beyond Plaintiff's contact information and appointment date." *Wilson*, 2021 WL 4865930, at *5. Nor did the plaintiff "allege facts that would allow the Court to infer that he received medical treatment during that examination." *Id.* *Wilson* does not stand for the blanket proposition that information relating to appointments is never medical information within the meaning of the CMIA.

**B. Plaintiff Alleges Facebook Viewed Plaintiff's Medical Information**

Defendant contends Plaintiff "fails to allege that Facebook accessed and viewed his event tags." Dkt. 17-1 at 23. The contention lacks merit.

At the pleading stage, plaintiffs need only allege facts that "give rise to the inference that their medical information has been viewed by an unauthorized third party." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F.Supp.3d 1284, 1299 (S.D. Cal. 2020) (allegations that plaintiffs received an increase in spam emails and phone calls were sufficient to create inference that their medical information was viewed); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1148 (C.D. Cal. 2021) (plaintiffs' allegations that unauthorized parties accessed and viewed relevant medical records" were sufficient on the pleadings); *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 923 (S.D. Cal. 2020); *Doe v. N. Cal. Fertility Med. Ctr.*, 2024 WL 246178, at *7 (E.D. Cal. Jan. 23, 2024). In *Cousin II*, the court held that allegations that "'[Facebook] regularly viewed' the information" and "information regarding [Facebook's] business model and how it uses the information for targeted advertising" were sufficient to satisfy the CMIA's viewing requirement. 2023 WL 8007350, at *4 (cleaned up).

Plaintiff's allegations and the reasonable inferences therefrom make clear that Facebook improperly accessed and viewed his medical information. *See* Dkt. 1 ¶¶ 8, 10, 22-49. Plaintiff alleges that Facebook's business model involves selling advertising space by "highlighting its ability to target users" and "make inferences about users beyond what they explicitly disclose." *Id.* ¶¶ 23, 34. Plaintiff also describes how Facebook: (1) "compiles this information into a generalized dataset . . . which allows advertisers to reach precise audiences based on specified targeting types" (*id.*); and (2) uses the intercepted information for targeted advertising through the Pixel. *Id.* ¶ 27. Moreover, Plaintiff alleges that once Facebook collects and intercepts information via the Pixel, the script "surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers" which contains "the original GET request sent to the host website, along with the additional data that the [Pixel] is configured to collect." *Id.* Plaintiff further alleges that Defendant's own code and Facebook's embedded code, which Defendant chose

to include on the Website, regularly and automatically intercepts information to reach customers in the future. *Id.* ¶ 30. Finally, Plaintiff alleges that he received advertising from Facebook relating to vision care following the interception of his medical information through Defendant's website. *Id.* ¶ 8.

Viewing Plaintiff's allegations and the reasonable inferences therefrom in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged that Facebook accessed and viewed his event tags containing medical information. Indeed, absent Facebook viewing Plaintiff's medical information, Facebook could not have known to send Plaintiff eye exam advertisements.

## IV. PLAINTIFF SUFFICIENTLY ALLEGES INVASION OF PRIVACY UNDER STATE LAW

Defendant contends Plaintiff fails to state a claim for invasion of privacy under the California Constitution because Plaintiff "did not have a legally protected privacy interest or reasonable expectation of privacy in the type of information that may have been disclosed . . . and because any alleged intrusion was not egregious or highly offensive as a matter of law." Dkt. 17-1 at 31. Not so.

### A. Plaintiff Has a Reasonable Expectation of Privacy

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. "It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Further, because "patient-status and medical-related communications between patients and their medical providers are protected by federal law" and are "almost uniquely personal," "communications made in the context of a patient-medical provider relationship are readily distinguishable from" general online communications. *Meta Pixel,* 647 F.Supp.3d at 800. Further, "[c]ase law supports [the] position that individuals maintain a

reasonable expectation of privacy in detailed URLs." *Id.* (citing *Facebook Tracking*, 956 F.3d at 605–06) (finding plaintiffs adequately pled a reasonable expectation of privacy in full-string detailed URLs).

As discussed above, through its use of the Pixel, Defendant allowed Facebook to intercept and otherwise obtain via full-string, detailed URLs, among other things, Plaintiff's PHI regarding the reasons for which he booked medical exams. It is axiomatic that Plaintiff had a reasonable expectation of privacy in that disclosed PHI.

**B. Defendant's Intrusion Was Highly Offensive and Egregious**

Courts assess an intrusion's offensiveness with "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook Tracking*, 956 F.3d at 606 (discussing *Hillsides, Inc*., 97 Cal.Rptr.3d 274). This calculus "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id*.

The question of "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Privacy Litigation*, 606 F.Supp.3d 935, 946 (N.D. Cal. 2022); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Williams v. Facebook, Inc.*, 384 F.Supp.3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury."). Notably, district courts have "refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here," the case involved the disclosure of "medical information, because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive.'" *Ambry*, 567 F.Supp.3d at 1143; *see also Doe v. Beard*, 63 F.Supp.3d 1159, 1170 (C.D. Cal. 2014) (denying the

defendant's motion to dismiss the plaintiff's invasion of privacy claim because "even negligent disclosure of HIV-positive status can be an egregious violation of social norms"); *Stasi,* 501 F.Supp.3d at 926 (denying the defendant's motion to dismiss invasion of privacy claim where plaintiffs alleged defendant negligently disclosed their medical information).

Based on well-settled authority, whether Defendant's unlawful conduct was highly offensive is not a proper inquiry at this early stage. *See In re Google RTB Consumer Privacy Litigation*, 606 F.Supp.3d at 946. Should the Court decide to engage in such an inquiry, Plaintiff has sufficiently pled that Defendant's invasion of Plaintiff's and class members' privacy was highly offensive given that it involved the disclosure of PHI. *See, supra*, §§ II-III.

**CONCLUSION**

For the reasons fully discussed above, Plaintiff asks this Court to deny Defendant's motion to dismiss the Complaint. Should the Court grant any part of Defendant's motion to dismiss, Plaintiff respectfully requests that he be granted leave to file an amended complaint.

Dated: August 1, 2024

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Brittany S. Scott</u>*
Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor

New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, IL 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned counsel of record for Plaintiff, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 1, 2024

By: */s/ Brittany S. Scott*
Brittany S. Scott