BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison Brown (SBN 291503)
harrison.brown@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

BLANK ROME LLP
Gabrielle N. Ganze (Admitted *Pro Hac Vice*)
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: 312.776.2575
Facsimile: 312.776.2601

*Attorneys for Defendant*
LUXOTTICA OF AMERICA INC. d/b/a
LENSCRAFTERS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON GRAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LUXOTTICA OF AMERICA INC. D/B/A LENSCRAFTERS,<br><br>Defendant. | Case No. 8:24-cv-00160-MRA-DFM<br><br>[*Assigned to Hon. Mónica Ramírez Almadani*]<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br><u>Hearing</u>:<br>Date: August 22, 2024<br>Time: 1:30 p.m.<br>Place: U.S. Courthouse<br>350 W. First Street<br>Courtroom 10B<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page**

I. Introduction....1
II. Plaintiff Has Not Alleged an Injury-in-Fact....3
III. Plaintiff Fails to Allege the Disclosure of Individually Identifiable Medical Information....5
IV. Plaintiff Cannot Assert a Wiretapping Claim Against LensCrafters....9
A. Cal. Penal Code §631(a) Does Not Apply to the Pixel....9
B. There Is No Underlying Illegal Conduct....10
C. There is No Legally Cognizable Privacy Interest....12
V. Conclusion....13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024) .......... 11

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 10, 11, 12

*Belluomini v. Citigroup Inc. et al.*,
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) .......... 16

*Bonnichsen v. United States*,
367 F.3d 864 (9th Cir. 2004) .......... 13

*Brown v. Google LLC*,
685 F.Supp. 909 (N.D. Cal. 2023) .......... 15

*Byars v. Goodyear Tire & Rubber Co.*,
654 F.Supp.3d 1020 (C.D. Cal. 2023) .......... 8

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 7, 8

*Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*,
34 Cal. Rptr. 3d 439 (2005) .......... 9, 10

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) .......... 10, 11, 15

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) .......... 10

*Doe v. Regents of Univ. of California*,
672 F.Supp.3d 813 (N.D. Cal. 2023) .......... 12

*Esparza v. UAG Escondido A1 Inc.*,
*2024 WL 559241* .......... 13

*In re Facebook Tracking*,
956 F.3d 589 .......... 9, 14, 15

*In re Google Assistant Privacy Litigation* (N.D. Cal. 2020) 457 F.Supp.3d 797 .......... 14

*In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 17

*Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591 (2020) .......... 15

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 17

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) .......... 7, 8

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 8

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 16

*In re Meta Pixel Healthcare Litig.*, 2024 WL 333883 (N.D. Cal. Jan. 29, 2024) .......... 9, 10, 11

*People v. Franco*, 6 Cal. 5th 433 (2018) .......... 15

*People v. Snyder*, 22 Cal. 4th 304 (2000) .......... 13

*Rahman v. Marriott Int'l, Inc.*, No. SA CV 20-00654-DOC-KES, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021) .......... 7

*Rodriguez v. Ford Motor Company* (S.D. Cal. Mar. 21, 2024), No. 3:23-cv-00598, 2024 WL 1223485 .......... 14

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) .......... 9

*Smith v. Facebook, Inc.*, 745 F. App'x *9 (9th Cir. Dec. 6, 2018) .......... 10

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (2023) ....................16

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 ....................16

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................13, 14

*Wilson v. Rater8 LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ....................11, 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 ....................16

**Statutes**

Cal. Civ. Code § 56.05(i) ....................9

Cal. Penal Code §631(a) ....................13, 14, 15, 16

NAGPRA § 3013 ....................13

## I. Introduction.

LensCrafters[1] moves to dismiss Plaintiff's Complaint because the hypotheticals and "examples" of what the Facebook pixel can do, and the conclusions drawn from the website URL address as somehow communicating medical information to Facebook, are insufficient and erroneous. Plaintiff's chief and only complaint is that the following website address is transferred to Facebook without website user's consent:

> (https://ww.lenscrafters.com/lc-us/eyeexam?storeId=10851&catalogId-11651&langId=-1&fromHeader=true&latLong=&page=0&apptId=&reschedule=&productId&locationEntry=,

Plaintiff does not actually allege that during the times he used the website, the Facebook pixel was running, or that his website event was transferred to Meta in this way. Nor does Plaintiff allege that the "vision care" advertisements he viewed on Facebook were related at all to LensCrafters. Instead, the entirety of his claim is based on hypotheticals and inferences stemming from the general functionality of the pixel on the website at some point in time.[2] Plaintiff then asks the Court to infer not only that he sustained actual injury from others possibly seeing his website visit, but that the fact that he was on a webpage for eye appointments means he communicated a message to LensCrafters and that such message also constituted medical information in the form of the nature of his treatment. The applicable case law does not support these legal conclusions based solely on URL website addresses. Even if it did, Plaintiff cannot dispute that LensCrafters did not also send any identifiable information to Facebook (as it must do for the statutes to apply); as Plaintiff repeatedly admits that it is Facebook that separately and independently assigns an ID number to Plaintiff's browser that is simultaneously obtained by Facebook. Compl. ¶¶ 39-42. The lack of any identifying information having been shared by

---

[1] All capitalized terms herein have the same definition attributed to them in the opening Motion to Dismiss.

[2] None of the screenshots in the Complaint are dated; nor do any of them indicate they are of Plaintiff's browser.

LensCrafters is an additional reason to dismiss the claims and find that Plaintiff lacks standing under Article III of the U.S. Constitution.

As argued in the opening brief, Plaintiff lacks standing because he does not allege any concrete injury or harm resulting from the alleged use of the pixel. Plaintiff also does not allege any facts regarding his own use of the website, the operation of the pixel, or the information that was collected or disclosed. And what he does allege—a mere website address—falls far short of the information needed to support Article III standing; particularly here where Plaintiff admits that Facebook, and not LensCrafters, issues the Facebook ID to the issuer, thereby breaking the "fairly traceable" link of the standing test.

Plaintiff also fails to state a claim under CIPA because he does not allege that Facebook intercepted any contents or meaning of a communication while in transit or that LensCrafters aided or abetted any illegal wiretapping. Indeed, Plaintiff pleads that Facebook is a service provider that offers business tools to website owners and fails to allege that the advertisements targeted to him were from other companies for whom Facebook was doing business. Similarly, Plaintiff has failed to identify any substantive medical information or protected health information as defined by CMIA. Plaintiff repeatedly references "PHI" and "PII" but fails to define them in a way that attributes relevant meaning to them under the statutes at issue. At its core, Plaintiff only alleges the disclosure of general scheduling information and page view data, which simply are not medical information under CMIA because nothing about them reveals "the nature of a patient's treatment."

In light of these deficiencies, and the fact that the website provided a pop-up notice informing users of the use of tracking technology and allowing them to opt out, Plaintiff fails to state a claim for invasion of privacy under the California Constitution. He does not and cannot allege, with the minimal facts outlined in the Complaint, a legally protected privacy interest, a reasonable expectation of privacy, or an egregious or highly offensive intrusion. None of Plaintiff's theories support the

conclusion that there is a privacy interest in browsing data collected on a public website or in communications that are not confidential or sensitive. Nor does Plaintiff identify any serious harm, motive, or policy violation that would render the alleged intrusion offensive.

LensCrafters requests that the Court dismiss the Complaint in its entirety.

**II. Plaintiff Has Not Alleged an Injury-in-Fact.**

Simply put, Plaintiff's allegations that LensCrafters *may have* disclosed website "PageView" information revealing interactions on LensCrafters.com is not sufficient to establish standing. *See Rahman v. Marriott Int'l, Inc.*, No. SA CV 20-00654-DOC-KES, 2021 WL 346421, at *2 (C.D. Cal. Jan. 12, 2021) (dismissing case for lack of standing where allegedly impacted "information obtained lack[ed] the degree of sensitivity required by the Ninth Circuit to establish injury in fact").

Plaintiff cites various cases that recognize certain violations of privacy rights can satisfy Article III standing (*See* Opp. 3-6). None of these cases salvage his failure to articulate any of *his* personal medical information was disclosed to Facebook. Instead, the Opposition regurgitates the conclusory allegations that permeate the Complaint. Plaintiff concludes his "PHI and PII" were disclosed without identifying what these mean or are. (Opp. at 5). Additionally, all the cases Plaintiff relies on to support standing are factually distinguishable to the allegations here.

Plaintiff's heavy reliance on *Jones v. Ford Motor Co*., 85 F.4th 570, 574 (9th Cir. 2023) is entirely misplaced. (Opp. at 4-6) First, *Jones* does not overrule the holding in *Byars*, 2023 WL 2996686 opining on Article III standing for CIPA claims. *See Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023). *Jones* was not a CIPA case, did not involve allegations regarding interactions on a website at all, and did not involve "aiding" a CIPA violation as Plaintiff makes clear to be his allegations here. Rather, in *Jones*, the defendant unlawfully recorded and stored private cellphone communications stored on the car physically. The Ninth Circuit did not endorse a standard that it is

sufficient for a plaintiff to merely conclude a "substantive" privacy right had been violated in order to meet the stringent requirements for Article III standing. The court focused on the plausibility standard. The plaintiff alleged Ford "automatically downloads, copies, and indefinitely stores" all call logs and text messages as soon as the plaintiffs' cellphones connected to it." *Jones v. Ford Motor Co,* 85 F.4th at 574. Based on the court's emphasis of these facts in *Jones*, it is clear that numerous cellphone conversations would have included content. Here, Plaintiff only provides hypotheticals instead of facts, which *Byars* rejected. *See also* Motion, at 9-10 (citing federal cases rejecting the proposition that a plaintiff can rely on hypothetical scenarios to meet Article III standing for state wiretapping claims).

Next, even the cases cited by Plaintiff recognize that he must sufficiently plead content that included something more than record information for purposes of sufficiently alleging a CIPA claim. Opp. at 4, citing *James v. Walt Disney Co*., 2023 WL 7392285, at *11 (N.D. Cal. Nov. 8, 2023); *Byars v. Goodyear Tire & Rubber Co*., 654 F.Supp.3d 1020 (C.D. Cal. 2023). He does not. Plaintiff has not alleged anything more than the hypothetical disclosure of record information. At core, Plaintiff identifies a URL webpage address containing a generic, book appointment screen where an eye exam *could be* scheduled. The URL does not contain any substantive information that would take it beyond mere "record information." *See* Compl., ¶¶ 38-39. This purported disclosure is not akin at all to common law harms.

It does not matter whether "egregiousness of the privacy invasion" can be resolved at this stage because Plaintiff fails to allege he sustained a cognizable privacy invasion in the first place. (*See* Opp. at 4, citing *Katz-Lacabe v. Oracle Am., Inc*., 668 F. Supp. 3d 928 (N.D. Cal. 2023*)).* Notably, the difference to the allegations in *Katz-Lacabe* are stark. There, the plaintiff complained about at least seven different technologies that Oracle "ubiquitously" utilized to amass data (from online and offline activities), then analyzed and sold the data. *Katz-Lacabe*, 668 F. Supp. 3d

at 936. The alleged conduct by LensCrafters is far more minor than *Katz* and Plaintiff only complains of the sharing of publicly available information.[3]

**III. Plaintiff Fails to Allege the Disclosure of Individually Identifiable Medical Information.**

The CMIA defines "medical information" as "any individually identifiable information, …regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). "Individually identifiable" means that the medical information includes any element of personal identifying information sufficient to allow identification of the individual. *Id.*

Here, Plaintiff alleges merely the use of a public website to schedule eye exams. This is no different than Plaintiff alleging that he physically walked into a LensCrafters store to do the same thing. Courts have repeatedly held that appointment information, even if coupled with names or other identifying information, is not "medical information," "protected health information," or any sensitive information subjecting the data collector to liability under the CMIA because "nothing about [the] information relates specifically to Plaintiffs' health" and the information is "general health information that is accessible to the public at large." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018*).*

Plaintiff then claims that the information relates to "the nature of a patient's treatment." Opp. at 17:4. Plaintiff asserts that the definition of medical information under the CMIA includes the nature of a patient's treatment, citing *Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*, 34 Cal. Rptr. 3d 439 (2005). *See id*. However, in *Colleen M.*, the plaintiff sued the defendant, a fertility clinic, because the

[3] To the extent Plaintiff relies on *Meta Pixel*, 647 F.Supp.3d at 795 and *In re Facebook Tracking,* 956 F.3d 589, 605, to support his standing argument, he overstates their holdings. (Opp. at 13) These cases only hold certain URLs have the *capability of* constituting communications under CIPA, they did not categorically hold that they do. *See infra*, Section IV.B.

defendant disclosed the fact that that the plaintiff was undergoing *in vitro fertilization*. 34 Cal. Rptr. 3d 439, 442 (emphasis added). The court in *Colleen M.* emphasized the fact that plaintiff's cause of action was based on a <u>specific treatment</u>, and not based on the plaintiff generally receiving treatment at defendant's facility or even that "the treatment had something to do with 'fertility' and may or may not have involved a 'surgical' procedure". *Id*. (emphasis added). Here, Plaintiff does not allege that any "specific treatment" information was disclosed. Plaintiff alleges that the Facebook pixel placed on the LensCrafters' website collected and disclosed to Facebook the fact that he scheduled an eye exam with Defendant. A generic description of "eye exam" appointment does nothing to indicate that the individual booking the appointment was seeking or received a specific type of treatment or that the individual has a specific medical condition requiring the eye exam. Indeed, it is assumed in the Complaint the only type of appointments an individual can make on the LensCrafters' website is for eye exams. *See Smith v. Facebook, Inc.*, 745 F. App'x *9 (9th Cir. Dec. 6, 2018) ("[D]ata [that] show[s] only that [p]laintiffs searched and viewed publicly available health information […] cannot, in and of itself, reveal details of an individual's health status or medical information.").

Plaintiff also cites to *Cousin v. Sharp Healthcare*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ("*Cousin II*"), *B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) and *In re Meta Pixel Healthcare Litig.*, 2024 WL 333883 (N.D. Cal. Jan. 29, 2024) to argue that booking appointments is considered "medical information" under the CMIA. However, in these cases, the tracking technologies installed on the defendants' website allegedly collected much more than information to schedule an appointment. *Cousin v. Sharp Healthcare,* 681 F.Supp.3d 1117, 1121 (S.D. Cal. 2023) (the Meta Pixel placed on the appointment scheduling page of the hospital defendant's website collected a "patient's medical condition, prescriptions,

diagnoses, and test results");[4] *B.K. v. Desert Care Network*, 2024 WL 1343305, *2 (C.D. Cal. Feb. 1, 2024) (the plaintiffs alleged that the Meta Pixel installed on the hospital defendant's website, including the defendant's patient portal, collected, among other things, information regarding the medical concerns and treatments researched by the plaintiffs and the plaintiffs' responses to medical forms and questionnaires, in addition to appointments scheduled and attended by plaintiffs); *In re Meta Pixel Healthcare Litig.*, 2024 WL 333883, *1 (N.D. Cal. Jan. 29, 2024*)*. As Plaintiff states in Opp. at 17, the plaintiffs in *In re Meta Pixel Healthcare Litig.* alleged that the Meta Pixel installed on the healthcare provider defendants' patient portals collected information about the *health conditions for which they sought treatment* or services. Here, no such health information is collected – just the alleged fact that the Plaintiff *may have* booked an eye exam appointment because he was visiting that page on the site, which in itself does not reveal any specific diagnosis, treatment, or medical conditions.[5]

Plaintiff alleges that Defendant's reliance on *Wilson v. Rater8 LLC*, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) is "misplaced". Opp. at 18. Plaintiff asserts, "Unlike *Desert Care Network*, that held that appointment information qualified as

---

[4] Additionally, the court in *Cousin II* also heavily relied upon the fact that the U.S. Department of Health and Human Services ("HHS") published a privacy bulletin on December 1, 2022 ("HHS Bulletin"), providing that the Health Insurance Portability and Accountability Act ("HIPAA") applies to the use of tracking technologies such as Meta Pixel embedded on an unauthenticated webpage that, for example, addresses specific symptoms or health conditions, such as pregnancy or miscarriage, or that permits individuals to search for doctors or schedule appointments without entering credentials. *Cousin II*, 2023 WL 8007350, *2. The court in *Cousin II* held that because the information collected by the Meta Pixel was likely considered protected health information under HIPAA based upon the HHS Bulletin, such information was "medical information" under the CMIA. *Id.* *4. While the appointment scheduling webpage on LensCrafters' website is an unauthenticated webpage, on June 20, 2024, the U.S. District Court for the Northern District of Texas issued an order declaring unlawful and vacating the HHS Bulletin to the extent it provides that HIPAA obligations are triggered in circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare providers. *See Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865, *2 (N.D. Tex. June 20, 2024).

[5] The case may be different, if, for instance, the Facebook pixel on the LensCrafters' website collected information on the results of Plaintiff's eye exam, such as that the Plaintiff had cataracts or astigmatism.

medical information under the CMIA, *Wilson* is an out-of-district case with no precedential value an out-of-district case with no precedential value." *Id.* Yet, *Desert Care Network* cites to *Wilson*, and Plaintiff elsewhere heavily relies upon a Southern District of California case. Furthermore, Plaintiff argues that *Wilson* is distinguishable because the plaintiff in *Wilson* did not allege facts that would allow the court to infer that he received medical treatment during that examination. *Id.* However, the same is true here – Plaintiff only alleges that Defendant disclosed the fact that the Plaintiff may have scheduled an eye exam appointment, not that Plaintiff received any medical treatment during the eye exam. *Id.*

Again, seeking an eye exam does not indicate any treatment, whether sought or applied. "Describing an examination as treatment does not make it so" and information about the appointment cannot be said to constitute information regarding treatment." *Rater8,* 2021 WL 4865930, *13 (S.D. Cal. Oct. 18, 2021).[6]

Here, not only does Plaintiff fail to allege the disclosure of identifiable information,[7] Plaintiff does not plausibly allege the disclosure of medical information. Plaintiff here is only able to allege the possible disclosure of page view and URL information indicating that an appointment *may* have been scheduled. *Id.* Plaintiff does not allege the disclosure of identifiable medical information under CMIA as a matter of law.

///

///

///

---

[6] Plaintiff provides no explanation as to *Doe v. Regents of Univ. of California*, 672 F.Supp.3d 813, 819 (N.D. Cal. 2023), cited in the Introduction of the Opposition brief. Assuming it relates to the portion of the opinion addressing the plaintiff's CMIA claim, the court analysis is inapposite. Notably, the *Regents* plaintiff specified that she entered medical information regarding her medical conditions of heart issues and high blood pressure on a password-protected *patient portal*. *Id.* at 816. None of those allegations exist here.

[7] Facebook ID numbers do not reveal personal identities. Even if they did, Plaintiff admits that LensCrafters does not assign nor disclose this information; rather, it is assigned by Facebook itself through a completely independent process. Compl. ¶¶ 39-42.

### IV. Plaintiff Cannot Assert a Wiretapping Claim Against LensCrafters.

#### A. Cal. Penal Code §631(a) Does Not Apply to the Pixel.

It is true that Section 631(a) contains a fourth basis for liability, for any other "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. Cal. Penal Code § 631(a). Plaintiff argues that "any person" covers service providers—admittedly, the courts are split on this issue,[8] but most courts agree that service providers must necessarily be considered extensions of a party absent nefarious conduct outside the service provider relationship.[9] Defendant cited a litany of such case law supporting this proposition. *See also Williams v. What If Holdings, LLC,* No. C 22-03780 WHA, 2022 WL 17869275, at *4 (N.D. Cal. Dec. 22, 2022) ("the fact that [the website] used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping.").

Realizing this, Plaintiff argues that Facebook provides service by way of a software that has the capability, and in some instances does, use the page view data for targeted advertising campaigns to core and custom audiences. Opp. 9:15-11:20. Even so, LensCrafters demonstrated in the opening brief that this allegation does not remove Facebook from the "service provider" category. *See* ECF 17-1, at 25-26. What is more, Plaintiff fails to provide any factual support as to how the pixel operated on LensCrafters' website specific to *his own use*, that the pixel "enables" Facebook to "include individual patients among groups targeted by *other* Facebook advertisers relating to the conditions about which patients communicated on

---

[8] *Esparza v. UAG Escondido A1 Inc., 2024 WL 559241, at *4* ("District courts in California are split on whether this exemption extends to third parties, particularly, third party software providers.").

[9] Plaintiff's citation to 9th Circuit authority as somehow leaving the scope of the fourth clause of Section 631(a) as "unrestricted" is shockingly misplaced. *Bonnichsen v. United States*, 367 F.3d 864 (9th Cir. 2004) is not a CIPA case at all, and the court in that case was actually interpreting § 3013 of the Native American Graves Protection and Repatriation Act ("NAGPRA") to determine whether plaintiff had Article III standing to sue, looking at the broad "any person" formulation in the statute and concluding it had no textual limitation on federal court jurisdiction. *People v. Snyder*, 22 Cal. 4th 304 (2000) is also similarly completely inapplicable.

Defendant's Website." Compl. ¶ 32. Because the pixel purportedly has certain capability that goes beyond the services provided to LensCrafters, Plaintiff hopes the Court will infer that Facebook indeed used *his* data in this way (if it used it at all) and for its own nefarious gains. The Court should disregard such speculative, conclusory allegations which lack a single iota of factual support. *See Rodriguez v. Ford Motor Company* (S.D. Cal. Mar. 21, 2024), No. 3:23-cv-00598, 2024 WL 1223485 *13 (order granting motion to dismiss aiding claim under CIPA).

**B. There Is No Underlying Illegal Conduct.**

As an initial matter, Plaintiff does not genuinely dispute that the first prong of Section 631(a) is inapplicable here. LensCrafters demonstrated that courts are unanimous in their holding that the first clause of Section 631(a) applies only to "communications over telephones and not through the internet." *None of Plaintiff's cited cases say otherwise. See* Opp. at 12 (citing cases for the general proposition that some sections of CIPA apply to the internet). "Plaintiff cannot circumvent the fact that clause one does not apply to the internet by using the internet function of a smart phone to access Defendant's website." *Rodriguez v. Ford Motor Co*., at *22 (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 and *Licea v. Am. Eagle Outfitters, Inc*., 659 F. Supp. 3d 1072, 1075). *See also Williams,* 2022 WL 17869275, at *2; *In re Google Assistant Privacy Litigation* (N.D. Cal. 2020) 457 F.Supp.3d 797, 825-826.

As to the second prong of Section 631(a), Plaintiff argues that URL information can contain "content" where it "includes information beyond basic identification and address information" such as "a user's personal interests, queries, and habits," citing *Facebook Tracking*, 956 F.3d at 605. In *Facebook Tracking*, the court was asked to decide whether a reasonable expectation of privacy exists in certain URL information. Even then, the court differentiated cases where the URL contained a webpage address "the user was viewing when the user clicked a link" with what was alleged in that case—namely, "a full-string detailed URL, which contains the name of a website, folder and sub-folders on the web-server, and the name of the precise file

requested." 956 F.3d at 605. The court likened this information similar to a search query on a Google search engine, rather than a mere "page view." *Id.* at 604. *Cf. Brown v. Google LLC*, 685 F.Supp. 909 (N.D. Cal. 2023) (distinguishing viewing of a document within a webpage as "the contents of a letter."). Thus, this case does not support Plaintiff's arguments here regarding "contents" under CIPA, particularly under the facts alleged. Similarly, *Brown v. Google LLC*, 685 F.Supp. 909 (N.D. Cal. 2023). By contrast here, Plaintiff did not view any document about health conditions or treatment information; nor was any information in the sample URL address cited by Plaintiff. *Cf. Cousin II*, 2023 WL 8007350 *5.

Plaintiff can argue that he viewed "a particular document" that was revealed by way of the URL, but that is not what is alleged in the Complaint; indeed, *nothing* about his particular URL journey is alleged. Plaintiff also argues in opposition that he wanted "new eye prescriptions," but no such words appear anywhere in the allegations regarding the URL transfer. Plaintiff's tongue-in-cheek conclusion that "the URLs at issue included private medical information revealing the nature of the appointment or the treatment being sought by a particular patient" is plain wrong. Opp. at 14. The Complaint does not allege *any* content or meaning of any communication that Plaintiff made through the website.

Next, again as to the second prong of Section 631(a), Plaintiff argues that "even if Plaintiff's communications were not intercepted 'in transit'…, his [] communications were 'sent from, or received at, a place within this state." Opp. at 15. But this argument—that "the 'in-transit' so called requirement is inconsequential to stating a viable claim under the second clause of section 631(a) because the Complaint alleges that [] the intercepted communication was sent from California"—misreads CIPA's plain text. The word "being" in "being sent . . . or received" is critical; it must be given its "usual and ordinary meaning" that a communication is in the process of being sent or received. *Gruber v. Yelp Inc*., 55 Cal. App. 5th 591, 605 (2020) (citation omitted); *see People v. Franco*, 6 Cal. 5th 433, 437 (2018) ("Courts

should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." (citations omitted) (alteration in original)). The "or" separating the phrases "in transit," "passing over any wire," and "being sent . . . or received" emphasizes the requirement that a communication be read while its transmission is in progress. Cal. Pen. Code § 631(a) (underlines added). Accordingly, courts interpret § 631(a) to "distinguish messages that have already arrived or are immediately being sent, as opposed to those 'in transit.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) (emphasis added); *see also Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *10 (holding "the word 'being' [in the context of 'being sent . . . or received'] confirms that the interception must be contemporaneous with the sending or receipt of the message"); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (2023) (finding the word "while" in "while the same . . . is being sent from or received" the pivotal word in the statute, and holding "Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California"). Plaintiff's strained reading of the transmission requirement must be rejected. That Facebook allegedly "contemporaneously" and "simultaneously" receives a GET load request simply means that Plaintiff's browser sends the information to Facebook through the pixel—*not* that the pixel "intercepts" the one communication sent to LensCrafters' website. *See* ECF 17-1, at 28-29 (discussing the transmission requirement in length).

### C. There is No Legally Cognizable Privacy Interest.

Contrary to Plaintiff's arguments in Opposition that he disclosed "protected health information" through the website that was collected by the URL, the Complaint alleges simply that Plaintiff viewed a publicly available webpage with generic information. The disclosure of that browsing event is not a violation of the Constitutional right to privacy. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082. *Belluomini v. Citigroup Inc. et al.*, 2013 WL 5645168 at *3 (N.D. Cal. Oct. 16,

2013); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

**V. Conclusion.**

Plaintiff's analysis and cited cases deal with protected medical information—yet, this case is not about that. Rather, Plaintiff just walked into a LensCrafters virtual store and looked at the appointment page. If anyone outside saw Plaintiff walking into the store and to the appointment aisle, it would not expose LensCrafters to liability; neither should this situation, assuming anyone even "saw" Plaintiff, as there is no specific allegation that Facebook did. The Complaint should be dismissed in its entirety with prejudice.

DATED: August 15, 2024 BLANK ROME LLP

By: */s/ Ana Tagvoryan*
Ana Tagvoryan
Harrison Brown
Gabrielle N. Ganze
Attorneys for Defendant
LUXOTTICA OF AMERICA INC. d/b/a
LENSCRAFTERS

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Defendant Luxottica of America Inc. d/b/a LensCrafters, certifies that this brief contains 5,156 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 15, 2024

By: */s/ Ana Tagvoryan*
Ana Tagvoryan