**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON GRAY,<br>Plaintiff,<br>v.<br>LUXOTTICA OF AMERICA, INC.,<br>Defendant. | Case No. 8:24-cv-00160-MRA-DFM<br><br>**ORDER DENYING IN SUBSTANTIAL PART AND GRANTING IN LIMITED PART DEFENDANT'S MOTION TO DISMISS [ECF 17]** |

Before the Court is Defendant Luxottica of America, Inc.'s Motion to Dismiss Plaintiff's Complaint (the "Motion"). ECF 17. The Court read and considered the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. The hearing was therefore vacated and removed from the Court's calendar. ECF 29. For the reasons stated herein, the Court **DENIES IN SUBSTANTIAL PART AND GRANTS IN LIMITED PART** the Motion with leave to amend.

///

///

///

///

## I. BACKGROUND[1]

Defendant Luxottica of America, Inc., doing business as LensCrafters (hereinafter, "Defendant," "Luxottica," or "LensCrafters"), owns and operates a website, www.lenscrafters.com.[2] ECF 1 ¶ 5. LensCrafters provides a range of optometry services,

---

[1] The factual background is described as alleged in Plaintiffs' Complaint unless otherwise indicated. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is required to presume that all well-pleaded factual allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, in deciding a facial challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). However, where the Rule 12(b)(1) challenge is factual, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[2] Defendant requests that the Court take judicial notice of two documents: (1) a printout of the LensCrafters website and (2) a printout of Defendant's Privacy Policy. ECF 17-3. Plaintiff opposes. ECF 25-1. Defendant states that the LensCrafters website employed a pop-up banner on the landing page that prompted visitors to reject or accept the use of cookies, script code, and other technologies. ECF 17-1 at 14.

Federal Rule of Evidence 201 "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)-(2)). Even if not subject to reasonable dispute, "an irrelevant fact cannot be classified as an adjudicative fact for purposes of Rule 201." *Waterkeeper v. Clay*, No. 18-CV-00333-DOC-DFM, 2023 WL 6787811, at *2 (C.D. Cal. Aug. 25, 2023).

The Court declines to take judicial notice of the requested documents because their contents are subject to reasonable dispute. The printouts are undated and not sufficiently authenticated as accurate reflections of the live version of the website during the limitations period. The documents, offered to advance an affirmative defense of consent, would impermissibly contradict numerous facts pleaded in the Complaint, which, taken as true, state that Plaintiff did not consent or authorize the collection at issue. *See* ECF 1 ¶¶ 10, 11, 50, 51, 75. "A court may not take judicial notice of the truth of disputed factual matters at the pleading stage." *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312,

including prescription eyewear, contact lenses, and routine eye exams. *Id.* Plaintiff Brandon Gray has used the LensCrafters website to schedule eye exams and obtain new eye prescriptions. *Id.* ¶ 7. The LensCrafters website is accessible on mobile devices and desktop computers. *Id.* ¶ 20. During the time Gray used the LensCrafters website, he maintained a Facebook social media account and used the same device to access the LensCrafters website and his Facebook account. *Id.* ¶ 8.

Facebook, Inc. ("Facebook")[3] accrues revenue by generating user data and selling advertising space. *Id.* ¶¶ 22, 23. By mining user activity, Facebook is able to make inferences about their users' interests, behaviors, and connections. *Id.* ¶ 23. This information is compiled into a generalized dataset called "Core Audiences," which allows advertisers to target particular audiences. *Id.* Advertisers can also build "Custom Audiences" to reach existing customers directly and "Lookalike Audiences" to leverage certain information to find new people who share qualities with their consumer base. *Id.* ¶ 24. These "Business Tools" can be integrated into company websites, mobile applications, and servers, to capture certain "events" on those platforms, such as site visits, downloads of a mobile application, and purchases. *Id.* ¶¶ 25-26. Advertisers can track certain "standard events" or create their own tracking parameter through "custom events." *Id.* ¶ 26. These events identify when someone takes an action on a website. *Id.* ¶ 30. One of Facebook's "Business Tools" is the "Facebook Tracking Pixel" (hereinafter, "Meta Pixel"). *Id.* ¶ 27. When a website hosts the Meta Pixel, Facebook's script directs the user's browser to contemporaneously send a separate message to Facebook's server, containing

---

1320-21 (C.D. Cal. 2023). Even if the documents were not subject to reasonable dispute, they do not set forth any adjudicative facts. The documents do not establish that *Plaintiff* opted-in or out of the use of cookies and other tools. Moreover, Defendant makes only a single passing reference to the documents in its discussion, indicating that any factual matter contained therein is not relevant to deciding the instant Motion. *See* ECF 17-1 at 33.

[3] In October 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. ECF 1 ¶ 2, n.1.

the original GET request sent to the host website as well as any additional data that the Meta Pixel is configured to collect.[4] *Id.*

LensCrafters includes the Meta Pixel on its website. *Id.* ¶ 28. When a patient accesses the LensCrafters website to book an eye exam, the Meta Pixel generates and transmits to Facebook an "eye-exam" or "reschedule" event indicating that the patient may be booking or rescheduling an eye exam. *Id.* ¶¶ 38, 39. The Meta Pixel uses first- and third-party cookies to connect these events to the user's Facebook ID ("FID"). *Id.* ¶¶ 39, 40-49. An FID is a unique identifier that Facebook assigns to each user. *Id.* ¶ 39. Anyone can use a FID to look up that user's Facebook profile. *Id*. Gray never consented, agreed, authorized, or otherwise permitted LensCrafters to disclose his information. *Id.* ¶ 50. Nor was he provided any written notice that Defendant disclosed his information or any means to opt out of such disclosures. *Id.*

On these allegations, Plaintiff filed this putative class action on January 23, 2024, alleging Defendant violated (1) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, (2) the California Confidentiality of Medical Information Act (the "CMIA"), Cal. Civ. Code § 56.10, and (3) the right to privacy under the California Constitution. *Id.* ¶¶ 70-99. Plaintiff seeks to represent a putative class of "California citizens who, during the class period, had their personal identifiable information or protected health information improperly disclosed to Facebook as a result of using [the LensCrafters website]." *Id.* ¶ 61.

Defendant filed the instant Motion on March 25, 2024. ECF 17. Plaintiff timely filed an Opposition on August 1, 2024. ECF 25. Defendant filed a Reply on August 15, 2024. ECF 28.

---

[4] A GET request is a common Hypertext Transfer Protocol ("HTTP") method for requesting data from a data source. *See generally HTTP Request Methods*, https://www.w3schools.com/tags/ref_httpmethods.asp (last visited Dec. 5, 2024). "The GET request serves two purposes: it first tells the website what information is being requested and then instructs the website to send the information back to the user." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing [jurisdictional] elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Since jurisdictional elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

A motion to dismiss pursuant to Rule 12(b)(1) can either be a "facial" or "factual" challenge to jurisdiction. *See Safe Air for Everyone*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, defendant brings a "facial" attack to jurisdiction, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. Where the Rule 12(b)(1) challenge is facial in nature, the court must accept the allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court "must accept as true all of the allegations contained in a complaint," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

### A. Standing

The Constitution limits the federal judicial power to "cases" and "controversies." U.S. Const., art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish "the irreducible constitutional minimum" of standing, a plaintiff must show (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. When plaintiffs in a class action lack standing, those plaintiffs cannot assert claims on behalf of themselves or any putative class members. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *Warth*, 422 U.S. at 501 ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

"Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v.*

*Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). A plaintiff "must demonstrate standing for each claim he seeks to press . . . [and] for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal citation omitted).

Defendant argues that Plaintiff has not plausibly alleged an injury in fact to establish Article III standing. ECF 17-1 at 16-19. To satisfy the injury-in-fact requirement, the alleged harm must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. sat 559–60 (quotations and citations omitted). To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo* 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). The injury must also be "*de facto*; that is, it must actually exist" for it to be concrete. *Id.* To determine whether an injury is concrete, courts must assess whether the alleged injury to the plaintiff bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Ramirez*, 594 U.S. at 425. This inquiry turns on whether plaintiffs have "identified a close historical or common-law analogue for their asserted injury." *Id.* at 424.

Plaintiff has plausibly stated an injury-in-fact to satisfy Article III standing. Plaintiff alleges that Defendant aided Facebook in "intercepting" his "sensitive and confidential" information shared with the LensCrafters website to schedule eye exams and obtain new eyewear prescriptions, and that these acts breached his right to privacy. ECF 1 ¶¶ 10, 11. "[V]iolations of the right to privacy have long been actionable at common law." *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). "A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.'" *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (*Facebook Tracking*), *cert denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021)). In passing state privacy laws, "the California legislature intended to protect these historical privacy rights." *Facebook Tracking*, 956 F.3d at 598; *see also* Cal. Pen. Code § 630 (noting that CIPA was passed "to protect the right of privacy

of the people of this state"); Cal. Civ. Code § 56.10(a). Because Plaintiff alleges violations of substantive privacy rights, his allegations sufficiently articulate an Article III injury in fact at the pleading stage. *See Jones*, 85 F.4th at 574.

Defendant contends that Plaintiff alleges only generalized, hypothetical injuries and therefore has not demonstrated a concrete and particularized injury. ECF 17-1 at 17-19. While the Court agrees that the Complaint contains many general statements and hypothetical scenarios, *see* ECF 1 ¶¶ 37-49, it contains sufficient factual matter alleging an infringement of Plaintiff's privacy rights, *see id.* ¶¶ 7, 8, 50, 51. That Plaintiff does not allege "any facts regarding his interactions with the website while the pixel was running, whether any information was transferred to Meta through the pixel tags, and if so, what information was transferred" goes to whether Plaintiff will prevail on the merits of his claim, not whether he has standing to sue. *See* ECF 17-1 at 17; *cf. Jones*, 85 F.4th at 574 (noting that whether the plaintiffs "will be successful on the merits in [this] suit . . . does not affect whether [they have] standing to pursue such a suit" (quoting *Iten v. Los Angeles*, 81 F.4th 979, 990 (9th Cir. 2023)). Plaintiff has plausibly alleged a harm to his privacy interests, and therefore has demonstrated an injury in fact sufficient to support standing at the pleading stage. The Court **DENIES** Defendant's Rule 12(b)(1) Motion.

## B. <u>Failure to State a Claim</u>

### *1. Claim 1: CIPA*

Section 631(a) of the California Invasion of Privacy Act ("CIPA") "prohibits any person from using electronic means to 'learn the contents or meaning' of any 'communication' 'without consent' or in an 'unauthorized manner.'" *Facebook Tracking*, 956 F.3d at 607 (quoting Cal. Pen. Code § 631(a)). The statute "prescribes criminal penalties for three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). It also prohibits any other who "aids, agrees with, employs, or

conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the first three prongs. Cal. Pen. Code § 631(a).

Plaintiff alleges that Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiff's internet communications while accessing the LensCrafters website. ECF 1 ¶ 75. He further claims that Defendant engaged in this conduct "to help Facebook learn some meaning of the content in the URLs and the content the visitor requested." *Id.* ¶ 76. By aiding Facebook in receiving Plaintiff's protected health information, Defendant allegedly violated CIPA. *Id.* ¶ 79. Defendant contends that Plaintiff's theory under the fourth, "aiding" prong fails because internet service providers like Facebook are exempt from CIPA liability, and the communications at issue do not contain "content" and were not intercepted "in transit." ECF 17-1 at 24-30.

a) <u>Service Provider Exemption</u>

A person who is a "party" to the communication is exempt from liability under CIPA. *See Facebook Tracking*, 956 F.3d at 607. There is no dispute that Defendant was a party to the communication—*i.e.,* Plaintiff's activity on its website. *See* ECF 17-1 at 25; ECF 25 at 14-15. In order to be liable for aiding a non-participant under the fourth prong, Defendant asserts that the eavesdropper must be an "independent part[y] who mined information and sold it for their own gain," not a party to the communication. ECF 17-1 at 25 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021)). Defendant favorably cites the district court's decision in *Graham* for the proposition that in the browser-tracking context, a software vendor (such as Facebook) provides a service to the website owner and operates as an "extension" of the website that employs it, and as a result cannot be treated as a third-party subject to liability under CIPA. *See Graham*, 533 F. Supp. 3d at 832; *see also Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) ("Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic.").

Defendant's reliance on *Graham*, however, is misplaced. Contrary to Defendant's assertion in its Reply, ECF 28 at 14, most district courts in the Ninth Circuit have rejected the argument that a service provider is categorically exempt from CIPA under the party exemption rule, *see Facebook Tracking*, 956 F.3d at 608; *see also, e.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899-901 (N.D. Cal. 2023); *Revitch v. New Moosejaw*, No. 18-CV-06827-VC, 2019 WL 5485330, at *1 (N.D. Cal. 2019); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (2021); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 603, 621 (C.D. Cal. 2021). This is in accord with the Ninth Circuit's decision in *Facebook Tracking*, where the circuit court held that "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception." *Id.* at 608. The court reasoned that "[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the [party] exception to swallow the rule." *Id.* at 608.

In *Graham*, the district court attempted to distinguish *Facebook Tracking* by reasoning that the vendor "provides a software service that captures its clients' data, hosts it on [its] servers, and allows the clients to analyze their data," whereas Facebook "mined information from other websites and sold it." 533 F. Supp. 3d at 832. The Court is not persuaded by this distinction. For one, it is inconsistent with the plain language of the statute. As the district court in *Javier* observed, *Graham* effectively "read[s] a use requirement into the second prong [of section 631(a)] [that] would add requirements that are not present (and swallow the third prong in the process)." *Javier*, 649 F. Supp. 3d. at 900; *accord Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) ("*Graham* and its progeny are based on a misinterpretation of Section 631 and [the California Supreme Court's decision in *Ribas v. Clark*, 38 Cal. 3d 355 (1985)], both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant."). Nor does the Court find it in keeping with the Ninth Circuit's holding in *Facebook Tracking*, which did not find relevant the third-party's *use*

of the collected information in concluding that Facebook "is not exempt from liability as a matter of law under . . . CIPA as a party to the communication." *Facebook Tracking*, 533 F. Supp. 3d at 832.

*Facebook Tracking* squarely controls here. Plaintiff alleges that Facebook's Meta Pixel operates by directing a user's browser to "contemporaneously send a separate message to Facebook's servers. This second secret and contemporaneous transmission contains the original GET request sent to the host website, along with additional data that the [Meta] Pixel is configured to collect." ECF 1 ¶ 27. Even if the Court were persuaded by the distinction drawn in *Graham*, whether Facebook is an independent third party or a passive service provider is a "question of fact for a jury, best answered after discover[.]" *Yoon*, 549 F. Supp. 3d at 1081. The facts pleaded in the Complaint are mixed on this issue. *Compare* ECF 1 ¶¶ 25 (describing Facebook's "Business Tools" as a service offered to website owners to "understand and measure their products and services") *and id.* ¶ 32 (alleging that the Meta Pixel allows Facebook to "include individual patients among groups targeted by other Facebook advertisers relating to the conditions about which patients communicated on Defendant's Website" (emphasis omitted)). And on a Rule 12(b)(6) motion, all reasonable inferences must be drawn in Plaintiff's favor. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

b) <u>Contents of Communication</u>

There is no real dispute among the parties that the second prong of section 631(a) applies to internet communications. *Compare* ECF 17-1 at 27-28 (contending that the first prong of section 631(a) does not apply to internet communications, thus "leav[ing] Plaintiff with the second prong of [s]ection 631(a)") *and* ECF 25 at 19-23 (maintaining that section 631(a) applies to internet communications, and that Facebook violated the second prong of the statute); *see also, e.g.*, *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to internet communications."); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *Yoon*, 549 F. Supp. 3d at 1080. The second prong imposes liability on

anyone "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn *the contents or meaning of any message, report, or communication* while the same is *in transit* or passing over any wire, line, or cable, *or is being sent from, or received at any place within this state*." Cal. Pen. Code § 631(a) (emphases added).

Defendant, however, argues that Plaintiff's CIPA claim should be dismissed because Facebook does not collect the "content or meaning" of Plaintiff's communications. ECF 17-1 at 27-28; *see* Cal. Pen. Code § 631(a). The Ninth Circuit has held that the "contents" of an online communication under federal wiretap law "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.* (*Zynga*), 750 F.3d 1098, 1107 (9th Cir. 2014) (holding that "[t]he referer header information that Facebook and Zynga transmitted to third parties[,] includ[ing] the user's FID and the address of the webpage from which the user's HTTP request to view another webpage was sent[,] . . . does not meet the definition of 'contents,' because these pieces of information are not the 'substance, purport, or meaning' of a communication"); *see also Yoon*, 549 F. Supp. at 1082 (applying the definition of "content" under the federal wiretap statute to section 631(a) claims); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (same).

In general, the "content" inquiry is "a contextual 'case-specific' analysis hinging on 'how much information would be revealed' by the information's tracking and disclosure." *Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022) (quoting *In re Google Inc. Cookie Placement Consumers Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015)). In *Zynga*, the Ninth Circuit distinguished between a URL that includes "only basic identification and address information," which does not constitute the "contents of a communication," and a URL that contains "a search term or similar communication made by the user," which may qualify as "contents" under the federal statute. 750 F.3d at 1109; *see also Hammerling*, 615 F. Supp. 3d at 1092-93 ("URLs are record information when

they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795-96 (N.D. Cal. 2022) (finding that descriptive URLs including both the "path" and the "query string" are "content because they concern the substance of a communication"). In *Facebook Tracking*, the court explained that search "terms and the resulting URLs could divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform," without deciding whether such information amounted to "content" for the purpose of section 631(a) or the federal Wiretap Act. 956 F.3d at 605, 608.

Here, Plaintiff alleges that the Meta Pixel transmitted not just the URL and basic metadata, but also "the fact that the patient was booking an eye exam." ECF 1 ¶ 38. The PageView event generated by Meta Pixel contains a full-string, detailed URL with the terms "eye-exam" and "reschedule." *Id.* This information can be connected to an individual's FID through first- and third-party cookies, and therefore is traceable to their Facebook profile. *Id.* ¶¶ 39, 40-49. Thus, because the information allegedly transmitted "include[s] personal search queries" such as "treatments for medical conditions," the Court finds that Plaintiff has "plausibly conveyed contents." *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (*Cousin II*); *see also R.C. v. Walgreens Co.*, No. EDCV 23-1933-JGB-SP, 2024 WL 2263395, at *16 (C.D. Cal. May 9, 2024) (finding that plaintiffs had plausibly alleged contents where the data purportedly collected by defendant and transmitted to third parties included personal health information revealing "a substantive message about [their] health concerns").

c) Interception

Defendant also argues that Plaintiff's CIPA claim fails because Facebook has not collected communications "while in transit." ECF 17-1 at 28-30. For a communication with a website to be "intercepted" without authorization, it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938,

954 (N.D. Cal. 2014) (applying *Konop* in the context of a CIPA claim). This is a "narrow definition" limited to "acquisition contemporaneous with transmission." *Konop*, 302 F.3d at 878. Thus, to state a claim under CIPA, a plaintiff must allege that the defendant "read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Mastel v. Miniclip SA*, 549 F. Supp. 3d. 1129, 1136 (E.D. Cal. 2021); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (explaining that "'[w]hile' implies the interception must occur contemporaneous with the sending or receipt of the message").

Here, Plaintiff alleges that when a user accesses a website hosting the Meta Pixel, such as the LensCrafters website, Facebook's code "directs the user's browser to contemporaneously send a separate message to Facebook's servers . . . contain[ing] the original GET request sent to the host website, along with additional data that the [Meta] Pixel is configured to collect." ECF 1 ¶ 27; *see also id.* ¶ 35. The cases relied upon by Defendant are distinguishable from the interception allegation made by Plaintiff. *Cf. Rodriguez v. Google, LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *1, *2 (N.D. Cal. Jan. 25, 2022) (holding that the complaint did not allege interception, where the defendant "log[ged] the data, and *then* transmit[ted] a copy later" (emphasis added)); *Licea v. American Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (finding that the plaintiff's "bare allegations that 'the third party . . . secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226-27 (C.D. Cal. 2017) (determining the "in transit" element lacking where the graphic included in the complaint suggested that the defendant transmits their data "significantly after the data arrive" on their platform). In contrast to the plaintiffs in *Licea* and *In re Vizio*, Plaintiff alleges specific facts about when the purported interception occurred and how the transmission occurred contemporaneously, not after-the-fact. *See* ECF 1 ¶ 27. On a motion to dismiss, a plaintiff "need not prove their theory of interception," but rather "must provide fair notice to [d]efendants of when they believe [the

defendant] intercepts their communications." *In re Vizio*, 238 F. Supp. 3d at 1228. Plaintiff has met this threshold requirement and plausibly alleged interception within the meaning of section 631(a).

Accordingly, the Court **DENIES** Defendant's Motion as to Claim 1.

***2. Claim 2: CMIA***

The California Confidentiality of Medical Information Act (the "CMIA") generally prohibits the unauthorized "disclos[ure] [of] medical information regarding a patient." Cal. Civ. Code § 56.10(a). "Disclosure" requires "affirmative communicative acts—giving out medical information on a patient." *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1554 (2014); *see also Regents of Univ. of California v. Superior Ct.*, 220 Cal. App. 4th 549, 564 (2013) ("*Regents*") ("'Disclose' . . . is an active verb, denoting in the context of CMIA and the protections afforded confidential medical information an affirmative act of communication.").

Plaintiff alleges that he was a Facebook user during the relevant time period, that Defendant hosted Meta Pixel on its website, and that Meta Pixel operated in conjunction with Facebook cookies to identify Plaintiff's FID so that Plaintiff's page-view events, "eye-exam" and "reschedule," were transmitted via Meta Pixel along with his FID. ECF 1 ¶¶ 7, 8, 28, 38. ECF 1 ¶¶ 7, 28, 39, 87. Defendant counters that Plaintiff's CMIA claim fails because the disclosed data does not constitute "medical information," and Facebook is not alleged to have accessed and actually viewed the information. ECF 17-1 at 20-23.

"Medical information" is defined as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). "'Individually identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that[] alone or in

combination with other publicly available information, reveals the identity of the individual." *Id*.

"It is clear from the plain meaning of the statute that medical information cannot mean just any patient-related information held by a health care provider, but must be 'individually identifiable information' and also include 'a patient's medical history, mental or physical condition, or treatment.'" *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 435 (2014). For example, "[t]his definition does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care." *Id.* Nor does it apply to "the mere fact that a person may have been a patient at the hospital at some time." *Id.*; *see also Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725-BAS-WVG, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022) ("Information that merely indicates appointment information is not 'medical information' under the CMIA."); *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (distinguishing between "information about [an] appointment" and "information regarding treatment"). In other words, "the information must be 'substantive,' rather than merely administrative." *Tamraz*, 2022 WL 16985001, at *4 (quoting *Eisenhower*, 226 Cal. App. 4th at 434).

Plaintiff contends that the information disclosed is "individually identifiable" because with a Facebook user's FID, "any ordinary person can look up the user's Facebook profile and name." ECF 1 ¶ 39. Courts have concluded that information connected to a FID is "personally identifiable." *R.C.*, 2024 WL 2263395, at *6; *Cousin II*, 702 F. Supp. at 973 (finding that plaintiff's interactions on defendant's website "plausibly involve [personal health information] that is individually identifiable because plaintiffs "plead that they are Facebook users"). "A Facebook user—even one using a nickname—generally is an identified person on a social network platform. The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user." *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014). Because

Plaintiff alleges that the disclosed information is associated with his FID, he has plausibly alleged that the information is individually identifiable.

However, Plaintiff has not sufficiently alleged that the disclosed data constitutes substantive "medical information" within the meaning of the CMIA. At best, it communicates that Plaintiff may have been a patient of LensCrafters at some time. The mere fact that the purportedly disclosed data reveals "the type of treatment sought (an eye exam)" (ECF 25 at 25) does not mean it amounts to information about Plaintiff's treatment protected from disclosure under the CMIA. *See Wilson*, 2021 WL 4865930, at *5 ("Describing an examination as treatment does not make it so."). Moreover, the cases cited by Plaintiff are distinguishable in so far as they involved disclosure of far more substantial and particularized information about the patient's condition and care. *See B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (finding that plaintiffs had adequately alleged the disclosure of medical information, where the data captured included not only "appointments," but also "refill prescriptions," "test results," and "appointment notes"); *Cousin II*, 702 F. Supp. 3d at 973, 975 (holding that plaintiff had sufficiently alleged the tracking of "medical information" where one plaintiff had filtered a physician directory by specialty and the other plaintiffs "set forth their particular medical conditions and allege that they searched [d]efendant's website for doctors who specialize in these conditions and for information about their conditions (i.e., symptoms, treatments, procedures)"). The Court therefore finds that Plaintiff has not plausibly alleged the disclosure of medical information within the meaning of the CMIA. The Court **GRANTS** Defendant's Motion as to Claim 2.[5]

---

[5] Defendant also argues that Plaintiff has not alleged that Defendant "released" and Facebook "actual viewed" his medical information. ECF 17-1 at 23. Because the Court finds that, at a foundational level, Plaintiff has failed to allege the disclosure of "medical information" within the meaning of the CMIA, it dismisses the CMIA claim on this ground alone and takes no position on whether these additional elements have also been met.

### 3. *Claim 3: Right to Privacy*

To state a claim of invasion of privacy under the California Constitution, a plaintiff must plead that "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Facebook Tracking*, 956 F.3d at 601 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).

Plaintiff contends that he has a reasonable expectation of privacy that his "communications, identities, health information, and other data would remain confidential and that Defendant would not install wiretaps" on its website. ECF 1 ¶ 96. Plaintiff alleges that Defendant's purported invasion of privacy was "serious in nature, scope, and impact" because it involved private medical information. *Id.* ¶ 98. Defendant argues that Plaintiff's invasion of privacy claim fails to satisfy all three elements. ECF 17-1 at 31.

#### a) <u>Legally Protected Interest</u>

Under the California Constitution, "[l]egally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35 (1994).

Plaintiff contends that Defendant has violated his right to informational and autonomy privacy. ECF 1 ¶ 94. As to autonomy privacy, Plaintiff's claim fails because "autonomy privacy protects *bodily* autonomy; courts have not extended the concept to *data* autonomy." *Yoon*, 549 F. Supp. 3d at 1086. As to the informational privacy theory, Defendant argues that because Plaintiff has failed to plead a statutory claim under CIPA or CMIA, he cannot plausibly allege a protected privacy interest under the California Constitution. ECF 17-1 at 31-32. Defendant further contends that Plaintiff has only

alleged the disclosure of "standard website tracking information, for which there is no legally protected privacy interest." ECF 17-1 at 32 (citing *Yoon*, 549 F. Supp. 3d at 1082).

The Court disagrees. Courts have generally recognized that individuals have a protected privacy interest in their health information. *See, e.g.*, *Ojeda v. Kaiser Permanente Int'l, Inc.*, No. EDCV 22-1057-MWF (GJS), 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022) ("It is well-settled under California law that, although not absolute, people have a privacy interest in their medical history and information." (internal quotation marks omitted)); *R.C.*, 2024 WL 2263395, at *5-8 (finding legally protected privacy interest where health information "relates specifically to Plaintiffs' health" (citation omitted)). Although the Court finds that Plaintiff has failed to allege the disclosure of "medical information" within the meaning of the CMIA, the Court concludes that he has plausibly alleged a legally protected interest under the California Constitution in the personally identifiable health information allegedly disclosed through the Meta Pixel. *See R.C.*, 2024 WL 2263395, at *5-6.

b) <u>Reasonable Expectation of Privacy</u>

"The existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *Facebook Tracking*, 956 F.3d at 601. Courts must "consider whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Id.* at 601-02 (quoting *Hernandez*, 47 Cal. 4th at 286)). The question here is whether a user of the LensCrafters website, such as Plaintiff, would reasonably expect that Facebook would have access to information that the user has scheduled an eye care appointment on the platform. *See id.* Plaintiff claims that he had a reasonable expectation of privacy that his "communications, identit[y], health information and other data would remain confidential" and that Defendant would not install wiretaps on its website. ECF 1 ¶ 96.

Courts generally must evaluate "both the nature of collection and the sensitivity of the collected information." *Facebook Tracking*, 956, F.3d at 603. In *Facebook Tracking*, the Ninth Circuit found that because the data at issue consisted of "highly personalized

profiles from sensitive browsing histories and habits," it was sufficiently sensitive in nature to state a reasonable expectation of privacy. *Id.* at 604 (distinguishing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (IP addresses) and *Zynga*, 750 F.3d at 1109 (referer header information containing "only basic identification and address information, not a search term or similar communication made by the user")). The court also observed that the nature of the collection, occurring after users had logged out of their Facebook account and while not using the Facebook interface, further supported the reasonable inference that plaintiffs have a reasonable expectation of privacy. *Id.* at 602, 605 (distinguishing *Zynga*, 750 F.3d at 1102).

The Court finds that the nature of the alleged collection and the sensitivity of the purported information collected here more closely resemble the facts in *Facebook Tracking* than in *Zynga*. As in *Facebook Tracking*, the information purportedly collected here is personally identifiable because it is connected through cookies to Plaintiff's FID and sensitive in so far as it reflects Plaintiff's health habits, specifically when a patient is using the LensCrafters website, not Facebook's own interface, to book or reschedule an exam. ECF 1 ¶¶ 38, 39. Plaintiff has plausibly alleged that this information constitutes more than the basic identification and address information at issue in *Zynga*, but a request for specific information that amounts to a disclosure of the contents of a communication. *See Zynga*, 750 F.3d at 1108-09 (acknowledging that "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication").

The Court finds that Plaintiff has plausibly alleged a reasonable expectation of privacy to survive dismissal. Like the plaintiffs in *R.C.*, Plaintiff alleges "more than merely viewing generic medical content on a publicly facing website." *R.C.*, 2024 WL 2263395, at *8. He claims that he "purchased specific products [(*i.e.* eye exams or eyewear)] to treat specific health conditions." *Id.* The Court is persuaded that Plaintiff's allegations "differ in kind and severity" to claims of public browsing activities that do not reveal personal

medical information. *Id.* at *9 (distinguishing between the purchase of health products related to diabetes and yeast infections and household items such as beauty supplies and laundry detergent). Plaintiff has sufficiently alleged Defendant aided Facebook in collecting "potentially sensitive data while users might not expect that [Facebook] was tracking them." *Hammerling*, 615 F. Supp. 3d at 1089.

c) Egregious or Highly Offensive

Defendant also contends that Plaintiff has failed to plausibly demonstrate that the purported invasion of privacy was egregious or highly offensive. ECF 17-1 at 31-34. Courts are generally "reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). To determine whether an invasion of privacy is "offensive," courts are required to consider "factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook Tracking*, 956 F.3d at 606. This inquiry also considers "the degree to which the invasion is 'unacceptable as a matter of public policy.'" *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (*Cousin I*) (quoting *Facebook Tracking*, 956 F.3d at 606).

Courts have generally concluded that "the collection and disclosure of a user's browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive.'" *Cousin I*, 681 F. Supp. 3d at 1126 (quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)). Whereas the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio*, 238 F. Supp. 3d at 1233. In *Cousin II*, the district court concluded that plaintiffs had plausibly alleged highly offensive behavior where they claimed that "their medical conditions and statuses as patients with certain doctors were tracked" on the defendant's website, linked to their Facebook account, and transmitted to Meta for targeted advertising. 702 F. Supp. at 974. Plaintiff's allegations here are not

dissimilar to those found plausible in *Cousin II*. Because Plaintiff has alleged more than the collection of merely routine commercial behavior, "[t]he ultimate question of whether [Defendant's disclosure of their information through Meta Pixel] could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Facebook Tracking*, 956 F.3d at 606. Plaintiff has identified sufficient facts to survive dismissal on this element.

Accordingly, the Court **DENIES** Defendant's Motion as to Claim 3.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In general, "[t]he court should freely give leave when justice so requires." *Id.* "This policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). At base, "leave to amend should be granted if it appears *at all possible* that the plaintiff can correct the defect." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2013)).

Here, the Court finds that granting leave to amend would not be futile. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)). It is possible that Plaintiff can allege facts to cure his CMIA claim.

Plaintiff is **GRANTED** leave to amend the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **DENIED IN SUBSTANTIAL PART** as to standing, Claim 1, and Claim 3 and **GRANTED IN LIMITED PART** as to Claim 2

with leave to amend. Any amended complaint shall be filed within **21 days** of the date of this Order. Plaintiff shall attach to the amended complaint a redline copy reflecting all additions and deletions of material from the Complaint. Any claim not included in a timely-filed amended complaint will be deemed dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: December 16, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE